BALDWIN, J.,
 

 delivered the opinion of the Court.
 

 The question presented by the second bill of exceptions taken at the trial is, whether the Circuit court erred in rejecting the evidence offered by the defendants in these actions for the purpose of proving that the contract upon which the actions are founded was procured from them respectively by false and fraudulent representations made to them at the time, as to the description, condition and value of the subject, by Williams the agent of the plaintiffs. And the question must be considered upon the hypothesis, that the defendants were able and ready to prove such false and fraudulent representations so made at that time. The first step in the order of such proof was of necessity evidence of the declarations and conduct of the agent at the time the contract was entered into; and the decision of the Court excluding the representations so made by him, assumes the proposition, that though the contract in question was so fraudulently procured from the defendants, it is nevertheless obligatory upon them.
 

 It cannot be doubted that where a contract is made between parties acting for themselves as principals, and in an action founded upon it, the defence is that the contract was procured by the false and fraudulent representations of the party seeking to enforce it, his conduct and declarations at the time are parts of the res gestas, and essential elements of the defence. If therefore the decision of the Court below can be sustained, it must be upon the ground of a distinction, applicable to these cases, between the effect of such a fraud when perpetrated by a principal, and its effect when perpetrated by an agent.
 

 *The question whether an agent has transcended the authority conferred on him by his principal in making a contract, usually arises where the other party is seeking to enforce it, and the agent’s want of authority is relied upon by the principal as matter of defence against the performance of the contract on his part. But in the present cases, the principals demand the performance of the contract by the other parties, and of course recognize the authority of their agent to procure it, but deny that they can be affected by the alleged false and fraudulent representations employed by him for that purpose. This denial rests upon the alleged ground that Williams was an agent of limited powers, restricted by his principals from making any representations true or false on the subject of the contract, and made the mere medium for communicating to purchasers the terms of sale proposed by his principals, and their own representations of the description, condition and value of the property.
 

 But the admissibility of evidence to prove the procurement of a contract by the fraudulent practices of an agent does not turn upon the extent or the limitations of his authority; for if so, then as the principal may in most cases recognize and confirm the authority of the agent, the consequences of his misconduct would be visited, not upon the person whose confidence enabled him to commit the fraud, but upon its innocent victim. The fraudulent conduct of the agent in procuring a contract may be an abuse of his known authority, or it may be accomplished by means of the suppression or concealment of the limitations upon it ; and in neither case can his principal give validity to the contract by repudiating the fraudulent practices employed to obtain it.
 

 That a person professing to act as agent for another does so wholly without authority, or transcends the authority actually conferred upon him by his principal, *is no reason for enforcing Ihe contract against the other party when obtained from him by false and fraudulent representations. In the words of a judicious writer: “Contracts made for the benefit of another, but without his privity or consent, may be rejected or affirmed at his election. But by making the election to affirm it he adopts that which is detrimental, as well as that which is for his benefit. And in seeking to enforce contracts entered into by agents, the principal is subject to have them impeached by an3r conduct of his agent which would have that effect if proceeding from himself. Every species of fraud, misrepresentation or concealment, therefore, in the agent, affects the principal’s right to recover.” Paley Agency, 324-5.
 

 That an agent to sell is restricted in the delegation of his authority by his principal from making any representations on the subject of the contract, whether true or false, has, it is true, a bearing upon the obligator force of the contract; but it is as a question of fact, and not as a question of law. It may be used in evidence as tending to prove that the representations of the agent, though false and fraudulent, had not the effect of deceiving the purchaser. But this presupposes that the restraint upon the authority of the agent was known to the purchaser; and whether he knew it, and the effect of such knowledge in preventing him from being deluded, deceived and defrauded, are also questions of fact for the consideration of the jury.
 

 It is difficult to conceive a case of an action founded upon a contract of sale, to which the defence is that it was obtained by fraud, in which the acts and declarations whether of the principal seeking to enforce the contract, or of his agent through whose intervention it was procured, occurring at
 
 *154
 
 the time of making it as part of the res gestas, are inadmissible evidence. Such a defence does not present a naked question of law for *the decision of the Court; but a mixed question of law and fact for the consideration of the jury, with the aid of such instructions as the Court may give in regard to the principles of law applicable to the facts that may be proved to the satisfaction of the jury.
 

 The bill of exceptions shews nothing to render these cases an exception to the general rule of evidence just mentioned. It appears therefrom that the contract in question consisted of a written prospectus on the part of the plaintiffs, in the form of a subscription paper, to be signed by the purchasers, for the sale of a number of shares of reserved stock of their Gold Mining company, upon the terms and conditions therein prescribed, representing the mines to be in full and successful operation, with several particulars of description and recommendation, and referring to the last report of the president and directors of the company for a full description of the mine, buildings, machinery, &c., which subscription paper was signed by the defendants and others. The plaintiffs also gave in evidence a report of the president and directors of the company to the stqckholders, containing a detailed and favourable description and statement of the condition of the mining property, and of the operations, resources and prospects of the company, as being the report referred to in the prospectus; but it does not appear that it was shewn to the defendants, or was called for by them; or that the prospectus itself was read to or by them, except so far as it may be inferred from their having subscribed it. It further appears that Williams was an agent of the compan3T for effecting the contemplated sales of the stock upon the terms and conditions prescribed in the prospectus; but the extent or limitations of his authority do not appear, except so far as may be inferred from the facts above mentioned, and the recognition of his agency by the act of the company in seeking to enforce the contract in question. Upon this state *of facts, the defendants offered to prove that Williams, at the time of procuring the subscriptions of stock from them, and for the purpose of inducing them to subscribe for and purchase the same, made representations, in addition to those contained in the prospectus and report therein referred to, as to the description, condition and value of the gold mine, upon the faith of which the defendants became subscribers for said stock; which representations were false and fraudulent; and for the purpose of getting such proof, asked a witness to state what representations were made to the defendants as aforesaid, touching the value and description of the mine and condition of the company: whereupon the counsel for the plaintiffs objected to the question and any answer thereto, upon the ground that it was incompetent for the defendants to give evidence of any representations by said Williams, because they insisted that he was a limited agent, whose authority was defined by the said prospectus and the report of the president and directors therein referred to.
 

 We are of opinion, for reasons above suggested, that the Circuit court erred in rejecting the evidence so offered b3r the defendants, upon the ground urged on the part of the plaintiffs, and if the propriety of its rejection on any other ground could be considered by this Court, as to which we express no opinion, none such appears from the bill of exceptions. The evidence relied on by the plaintiffs as proving acquiescence in and recognition of the contract on the part of the defendants, was proper for the consideration of the jury, in connection with all the circumstances of the case, and the principles of law applicable thereto; but could not be used by way of estoppel, for the purpose of excluding the evidence of fraud offered by the defendants.
 

 The Court is further of opinion, that the Circuit court did not err in the rejection of the declarations of Jackson, the president of the company, as stated in the *third bill of exceptions, upon the assumption made by that Court, that he was identified as the person who made them; inasmuch as it does not appear that he acted as the authorized agent of the company for the purpose of making sales of the stock above mentioned.
 

 And the Court is further of opinion, that there is no error in the several decisions of the Circuit court, rejecting proposed instructions, nor in the actual instructions given, as set forth in ' the several bills of exception in relation thereto.
 

 The Court therefore, without considering whether the bill of exceptions to the refusal of the Circuit court to grant a new trial, was properly taken, is of opinion that the judgments must be reversed for the error of that Court in rejecting the evidence offered of the declarations of Williams, as stated in the second bill of exceptions.
 

 Judgments reversed, with costs to the plaintiffs in error, verdict set aside, and new trial directed.