Bouldin, J.,
delivered the opinion of the court.
Dr. N. M. Osborne, late of the city of Petersburg, died in that city in the year 1869, having duly made his last will, and leaving the appellant, his widow, him surviving, but no children. By the first clause of the will the testator gave to his wife Sarah M. Osborne (the appellant) all his property for life. The second clause is as follows:
“I give to her, in fee, her Clover-Hill stock, four thousand dollars of State stock, registered bonds, nine shares of Richmond and Petersburg railroad stock, and twelve *shares of Southern railroad stock, to do with as she pleases.”
N. M. Osborne, jr., a nephew of the testator, was appointed and qualified as his executor; and a question arose between the executor and the appellant, as to what passed to her under these words, in the second clause of the will:
“I give to her, in fee, her Clover-Hill stock.” To settle this question alone, the suit was brought by the appellant, in the Hustings court of the city of Petersburg, from the final decree in which this appeal was taken.
The facts, so far as pertinent to the question, are briefly as follows:
In the year 1857 the appellant, then Sarah M. Maitland, intermarried with the testator, N. M. Osborne. At the date of the marriage, she was possessed, in her own right, of the following stocks, viz:
Clover-Hill railroad company, 50 shares; Richmond & Petersburg railroad company, 9 shares; Southern railroad company 7 shares. After the marriage, and in the same year, (1857.) these shares were all regularly transferred to the said N. M. Osborne, and thereafter stood in his name; and in 1858, several thousand dollars of Virginia State bonds were purchased by Robert E. Maitland, trustee of appellant, with her money, and by her direction were transferred to the testator, N. M. Osborne. Whilst these stocks were standing thus in the name of Dr. Osborne, the number of shares held by him in the Southern railroad company was increased by purchase from seven to twelve shares, five being added. In this state of things, there were two successive stock dividends, (as they are called,) declared by the Southern railroad company, not out of profits realized, but simply by increasing the number of shares in the hands of the shareholder, *so as to make the increased number of shares represent precisely the same capital which was before represented by the original number. It was in no sense a dividend of profits, but merely a subdivision of capital stock, describing the same capital by a larger number of shares. Under this process, the interest in the Southern railroad company, held by Dr. Osborne, was described by eighteen shares instead of twelve; and by a precisely similar process his interest in the Clover-Hill railroad company came to be described by seventy shares, instead of fifty; a nominal increase o f twenty shares; but, as we have said, only a subdivision of shares, without increase of property, the increased number of shares representing precisely the same capital stock, neither more nor less. It further appears that when this increase was made, separate scrip for the twenty new shares was made out in the name of Dr. Osborne, and sent to him, and that he subsequently returned that and the scrip for the original fifty shares, and took one certificate for the whole number of seventy shares.
*138 Such, was the condition of these stocks when Dr. Osborne made his will, and when he died. He had eighteen shares of Southern railroad stock, which included the seven shares acquired by his wife, the five shares purchased of Spencer, and the increased hares on both. He had the nine shares Richmond and Petersburg stock acquired by his wife, and he had the Clover Hill stock —that is to say, seventy shares Clover Hill stock acquired by. his marriage with her. He had no children, and after giving his wife a life estate in all his property he gave her in fee, among other things, "her Clover Hill stock,” “tovdo with as she pleases;” and the question was, What did he mean to give her by those words? The Hustings court held that he intended only the original fifty shares; and *gave her those only, and decreed also that she should pay the costs of the suit. Prom this decree Mrs. Osborne has appealed to this court.
The question before us is simply this, What stock did Dr. Osborne intend to describe by the words used in his last will? The words themselves are plain and unambiguous. After having given to his wife all his property for life, in the first clause of his will, he goes on in the 2d as follows: “I give her in fee her Clover-Hill stock” (and other things) “to do with as she pleases.” Now it is perfectly clear, that something was intended to be given to the wife in fee, by this language; that that something was “Clover-Hill stock”; and that there was something present to the mind of the testator wliich made it appropriate, in his opinion, that the “Clover-Hill stock’ ’ given to her should be designated “her Clover-Hill stock.” If, then, we can find the subject matter thus described and plainly given to the wife; if we can find Clover-Hill stock under the control of the testator, which, at the date of his will, might be reasonably described by him as “her Clover-Hill stock,” to all such stock Mrs. Osborne is clearly entitled. The word “her,” as used by the testator in describing the stock given to his wife, was not intended to affirm that the property was in the wife; to imply that what he was giving was already hers. He knew the contrary; and the solemn duty he was then performing in giving her the stock, shows that the word was not used in that sense. There was, therefore, some fact present to the mind of the testator which induced the description. Whether there be. such stock, is purely a question of fact, de hors the will. The bequest is plain. The question is: Is there a subject to answer the description? And in solving this question, precedent and authority are of but little service: it must depend solely on the facts of this case. *And in making an application of these facts to the bequest under consideration, we need only to bear in mind the following principle, extracted by Judge Redfield from the cases, viz: “It is never required that all the particulars of name or description of person or thing should be precisely accurate, in order to the validity of the provisions of the will. It is always sufficient that the court, after learning the surrounding facts and circumstances, should be able, with reasonable certainty, to declare the intent of the testator.” Bet us then for a moment occupy the stand-point of the testator at the date of his will. He doubtless felt, for he died soon after, that his earthly career was drawing to a close, and that it was necessary and proper for him to make suitable provision for those having meritorious claims upon him. He had a wife, but no children nor descendents. His wife was naturally and in fact the prime object of his bounty; and we find that by the first clause of his will he gives her all his property for life. But he remembered, as it was right and proper that he should remember, that he then held valuable interests wholly acquired through her; interests which, as there were no children of the marriage, would by the law of distributions, pass, as far as they could be traced in kind, to her absolutely, in the event of his intestacy. What so natural and proper as that he should remember these interests at such a moment, and that he should act in relation to them at least as liberally to her as the law would in case of intestacy? We find from the will that he did so act. He acquired by her several thousand dollars Virginia State bonds, the exact amount not proved; the bill says six thousand, the answer several thousand. He gave her in fee four thousand dollars State stock, registered bonds. He held at his death nine shares Richmond and Petersburg railroad stock, acquired through his wife. He *gave her dll of them. He had eighteen shares Southern railroad stock, seven original shares, acquired by his wife, and five by purchase. These twelve shares were increased in number by subdivision of capital stock, or increase of shares as it is called, to eighteen, as above mentioned. Without nicely calculating the proportionate increase of the number acquired by his wife, he gave her twelve shares, being rather in excess of her due proportion; and finally, to come to the clause under consideration,(not, however, in the order in which they are mentioned in the will,) he had standing in his name seventy shares Clover Hill railroad stock, acquired, as we have seen, through his wife; 50 original shares acquired on marriage, and twenty additional, added by subdivision of capital stock, or increase of shares, as aforesaid. Separate scrip, as we have seen, was first issued to him for the twenty shares; but he returned his scrip, as well for the original fifty as for the additional twenty shares, and took one certificate for the whole number of seventy shares. He held them unchanged until his death, having at the date of his will, and at his death, no other “Clover Hill stock” than these seventy shares thus acquired through his wife; and he says in his will, “I give to her in fee her Clover Hill stock.” What “Clover Hill stock?” Beyond all question the seventy *139 shares Clover Hill railroad stock acquired by the testator jure mariti, and which by the law would be his wife’s—her’s were he to die intestate. He intended to do with this stock precisely what he did with the other interests similarly acquired; which we have seen were given to her in fee.
Reading this will, then, by the light of these surrounding facts and circumstances, we think we may declare, not merely with “reasonable certainty,” but almost with absolute “certainty,” that it was the intention of the testator, *by the bequest under consideration, to give to the appellant the seventy shares of Clover-Hill railroad stock, '' acquired by him through his wife as aforesaid, and standing in his name at his death. The decree of the Hustings court is, therefore, erroneous, and must be reversed, with costs to the appellant ; and a decree must be entered here in accordance with this opinion, and certified to the Hustings court.
The decree was as follows:
This day came again the parties by counsel, and the court having maturely considered the transcript of the record and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the Hustings court of Peters-burg erred in holding that the appellant, under the testator’s will, was entitled to only fifty shares of Clover-Hill railroad stock instead of seventy shares, as claimed in her bill. It is therefore decreed and ordered that the said decree of the Hustings court of Petersburg of the 18th of November 1870, be reversed and annulled, and that the appellee, out of the assets of his testator in his hands to be administered, do pay to the appellant her costs by her about her appeal to this court expended.
And this court, proceeding to enter such decree as should have been entered by said Hustings court, doth decree and order, that Nathaniel M. Osborne, as executor of Nathaniel M. Osborne, deceased, do transfer in proper form and deliver to Sarah M. Osborne, the complainant in said court, as her absolute property, seventy shares of the stock of the Clover-Hill Railroad Company, owned by the testator, Nathaniel Osborne, deceased, at his death; and that said Nathaniel M. Osborne, as executor as aforesaid, out of the assets of his testator *iu his hands to be administered, do pay to said Sarah M. Osborne her costs in said Hustings court expended. Which is ordered to be certified.
Decree reversed.
STOCK AND STOCKHOLDERS.
A. Stock.
I. Definition and Nature.
II. Lien o£ Corporation on Stock.
III. Dividends.
IV. Guaranteed or Preferred Stock.
V. Liability to Attachment and Garnishment.
VI. Taxation of Stock.
B. Stockholders.
I. Definition and Status.
a. Evidence of Membership.
IT. The Contract of Subscription.
a. Status of Stock Subscriptions Made before Incorporation.
b. Manner of Subscribing.
c. Defenses to Stock Subscriptions.
1. Fraudulent Representations.
2. Capital Stock Not Fully Subscribed.
d. Release from Contract of Subscription.
III. Rights of Stockholders.
IV. Liabilities of Stockholders.
V. Transfer of Stock.
VI. Pleading and Practice.
A. STOCK.
I. Definition and Nature.
in General.— “Stock” is defined generally as the sum of all the rights and duties of the shareholders of a corporation. 23 Am. & Eng. Enc. Law 548.
Capital Stock.--“Capital Stock” is the fund of money or other property fixed as the basis for conducting the business of the corporation. 23 Am. & Eng. Enc. Law 585.
Shares of Stock.--“Shares of Stock” are a species ot incorporeal personal property consisting of rights in the profits, management and assets of the company. 23 Am. & Eng. Enc. Law 588.
As said by Allen, P., in Barksdale v. Finney, 14 Gratt. 357, “a share in a joint stock company is not strictly speaking a chattel, but bears a greater resemblance to a chose in action.” See also, Ches. & O. R. Co. v. Paine, 29 Gratt. 506.
A deed which conveys all the grantors’ “property, real and personal,” embraces and conveys all their shares of stock in a national bank. Feckheimer v. Nat. Bank, 79 Va. 80.
II. Lien of Corporation on Stock.
For Any Debt of Stockholder.—In Bohmer v. City Bank, 77 Va. 445, the charter of a bank provided, that “the bank shall have a lien prior to ail others upon any stock held by a stockholder for any debt of said stockholder to said bank." A stockholder, indebted to the bank, borrowed money from a third person and gave him the certificate as collateral with power of attorney to transfer the stock; after becoming bankrupt the original stockholder applied to the bank to transfer the stock, but the bank refused to do so until paid its debt due from the said stockholder. Held, the act incorporating the bank, superseded the general law providing for the transfer of stock, and gave the bank the prior lien for any debt due it from a stockholder, on his stock; hence the bank had the right to be first satisfied before transferring the stock to the lender of the stockholder; nor is this lien waived by the company’s leaving the certificates outstanding. See also, Petersburg, etc., Co. v. Lumsden, 75 Va. 327.
For Balance Due upon Shares.—According to statute there is a lien upon the stock of each stockholder in a joint stock company for the balance due upon his shares of stock; and this lien is not discharged by an assignment of the stock. But the statute gives no lien to the company on the stock of a stockholder for any other debts due from him, than that which is due for unpaid stock. Petersburg, etc., Co. v. Lumsden, 75 Va. 327.
Neither does this lien extend to paid up shares to secure payment of unpaid subscriptions for other shares; and the sale of such paid up shares for such purpose by the company is void. Shen. Val. R. Co. v. Griffith. 76 Va. 913.
*140 III. Dividends.—Where the directors fail to declare dividends at the stated time, as directed by the charter, it is not in their power to declare a dividend to extend back over the periods during which they had failed to declare dividends. Gordon v. R., F. & P. R. Co., 78 Va. 502.
The owner of certain shares of stock makes a general deed of assignment to a trustee for the benefit of his creditors. Held, the trustee is entitled to have transferred to him for the purposes of the trust, not only the shares, but dividends that maybe due on them. Feckheimer v. Nat. Exch. Bank, 79 Va. 80.
If the board of directors of a corporation, when it is insolvent, declare a dividend of net profits, the directors concurring in the act, in their individual capacity, are jointly and severally liable to the corporation’s creditors for the amount of capital stock so divided. Slaymaker’s Adm’r v. Jaffray, 82 Va. 346.
IV. Guaranteed or Preferred Stock.—In Gordon v. R., F. & P. R. Co., 78 Va. 513, there is a dictum, to the effect that, stock with guaranteed dividends, means a guarantee of dividends, but not of stock, in a winding up; while preferred stock, as contradistinguished from common stock, has a preference over common stock in a distribution of net profits.
It was held in the same case (Gordon v. R., F. & P. R. Co., 78 Va. 501), that, the holders of guaranteed stock are entitled not only to participate in due proportion in the cash dividends declared in favor of the holders of common stock, but also in the issuance of dividend obligations; and the dividends of such guaranteed stock are payable out of gross receipts of the company, and in a division of the assets, must be paid, if need be, to the exclusion of the common stock.
For sequel to the above case of Gordon v. R., F. & P. R. Co., 78 Va. 501, see 81 Va. 621, where other points on the subject of guaranteed stock are decided.
V. Liability to Attachment and Garnishment.—Thfe shares of a stockholder in a joint stock company, incorporated by and conducting its operations, in whole or in part, in the state are such estate as is liable to be attached in a proceeding instituted for that purpose, by one of the creditors of such stockholder; and such estate may properly be considered, for the purpose of such proceeding, as in the possession of the corporation in which the shares are held, and such corporation may properly be summoned as garnishee in the case. Chesapeake & Ohio R. Co. v. Paine, 29 Gratt. 502.
If, in such a proceeding, the stock should appear to be liable to the lien of the attachment, it ought to be sold for the satisfaction of the same under, an order of the court made for that purpose in the attachmentproceeding; butitis error for the court to render a judgment against the garnisheed corporation for the value of the stock, unless it appears that the lien of the attaching creditor on the stock was lost by the act of the corporation. Chesapeake & Ohio R. Co. v. Paine & Co., 29 Gratt. 502.
The certificate of shares of stock not being negotiable, an attachment of such stock takes precedence over a subsequent bona fide purchaser thereof without notice. Shen. Val. R. Co. v. Griffith, 76 Va. 913; C. & O. R. Co. v. Paine, 29 Gratt. 502; Massey v. Yancey, 90 Va. 626, 19 S. E. Rep. 184. See monographic note on “Attachments,” appended to Lancaster v. Wilson, 27 Gratt. 624.
VI. Taxation of Stock.
Shareholders’ Liability.—Section 93 of the Act of February 15th, 1866, for the assessment of taxes, embraces express companies chartered by the State of Virginia; and the present stockholders are personally liable for taxes due to the commonwealth from the company incurred while they were stockholders; for though the charter of an express company did not make the stockholders personally liable for the debts of the company, the said assessment act passed subsequent to the charter, has so far modified the charter as to make them personally liable. Anderson v. The Commonwealth, 18 Gratt. 295.
Taxation of Capital Stock as Well as Shares of Stock. —The capital stock and the shares of the capital stock are distinct things, the former belonging to the corporation and the latter to individuals. Both may be taxed, and it is not double taxation. State Bank of Va. v. City of Richmond, 79 Va. 113; Com. v. Charlottesville Perpetual, etc., Co., 90 Va. 790, 20 S. E. Rep. 364.
B. STOCKHOLDERS.
I. Definition and Status.—A stockholder or shareholder is one who holds membership in a corporation or joint stock company by virtue of owning one or more shares of its stock. 23 Am. & Eng. Enc. Law 779.
a. Evidence of Membership.—The books of the corporation are prima facie evidence of its membership, and a party’s name on such books as a member has been held sufficient proof of his status as a stockholder. Vanderwerken v. Glenn, 85 Va. 9, 6 S. E. Rep. 806; Lewis v. Glenn, 84 Va. 947, 6 S. E. Rep. 866; Stuart v. Valley R. Co., 32 Gratt. 146; P., W. & K. R. Co. v. Applegate, 21 W. Va. 172; Donnally v. Hearndon, 41 W. Va. 519, 23 S. E. Rep. 646.
But the mere signature of a subscription paper does not perse constitute a contract of subscription to the. stock of a corporation. Stuart v. Valley R. Co., 32 Gratt. 146.
II. The Contract of Subscription.
a. Status of Stock Subscriptions Hade before Incorporation.—An agreement to subscribe for shares in a corporation to be organized in future is a mere offer which may be withdrawn at any time before the corporation comes into existence and accepts the offer. Stuart v. Valley R. Co., 32 Gratt. 146; Lewis’ Adm’r v. Glenn, 84 Va. 947, 6 S. E. Rep. 866.
In West Virginia it is held, that a person who signs and acknowledges an agreement under section 6, c. 54, Code, for the formation of a corporation becomes a subscriber for stock, and is bound to pay for it when the company afterwards becomes incorporated and organized. But one who signs, but does not acknowledge, such agreement, does not become a stockholder, and is not bound for the subscription therein made, unless he in some way acknowledge the existence of the corporation. And if such agreement be not acknowledged at all prior to the issue of the certificate of incorporation, the company does not obtain corporate existence as to those who by such preliminary agreement subscribe stock, and they are not compelled to pay such subscription. Greenbrier Industrial Exposition v. Rodes, 37 W. Va. 738, 17 S. E. Rep. 305.
A fundamental variance in the certificate of incorporation from such preliminary agreement will relieve one who by it subscribed stock from payment thereof. Greenbrier Industrial Exposition v. Rodes. 37 W. Va. 738, 17 S. E. Rep. 305.
b. Manner of Subscribing.—A subscription to stock may be valid though not formally in compliance *141 with the statutory provisions for taking subscriptions. Stuart v. Valley R. Co., 32 Gratt. 146.
c. Defenses to Stock Subscriptions.
i. Fraudulent Representations.—Where one is fraudulently induced by an agent or promoter of a corporation to subscribe to its capital stock he may repudiate the contract at his discretion. Virginia Land Co. v. Haupt, 90 Va. 533, 44 Am. St. Rep. 939, 19 S. E. Rep. 168; Crump v. U. S. Min. Co., 7 Gratt. 352, 56 Am. Dec. 116; Bosher v. Richmond, etc., Land Co., 89 Va. 455. 16 S. E. Rep. 360, 37 Am. St. Rep. 879; Owens v. Boyd Land Co., 95 Va. 560, 28 S. E. Rep. 950; McClanahan v. Ivanhoe, etc., Co., 96 Va. 124, 30 S. E. Rep. 450; West End, etc., Co. v. Claiborne, 97 Va. 734, 34 S. E. Rep. 900.
But .such contracts to purchase stock, induced by fraudulent representation, are not void, but only voidable at the purchaser’s option. Weisiger v. Richmond, etc., Co., 90 Va. 795, 20 S. E. Rep. 361; Wilson v. Hundley, 96 Va. 96. 30 S. E. Rep. 492; Martin v. South Salem Land Co., 94 Va. 28, 26 S. E. Rep. 591.
Defendant signed a subscription to stock in a corporation, circulated with a prospectus stating that the corporation was to be located at R.; that the maximum capital was to be $400,000, and that its purpose was limited to “manufacturing locks, bolts, all house hardware, and other articles of a similar character.” Later a second prospectus, under which the corporation was afterwards organized, was circulated for signatures, by which it was stated that the corporation was to be located outside of R.; that the maximum capital was to be $500,000, and the purpose to embrace a large variety of industries. Defendant refused to sign this second prospectus. Held, the defendant was not liable to plaintiff for stock he subscribed to under first prospectus. Norwich Lock Mfg. Co. v. Hockaday, 89 Va. 557, 16 S. E. Rep. 877.
“Promissory Representations.”—Mere statements of true intention, or opinions, upon which the subscriber has no right to rely, are not such fraudulent representations as entitle him to a rescission of the contract of subscription. Anderson v. Creston Land Co., 96 Va. 257, 31 S. E. Rep. 82; Wilson v. Hundley, 96 Va. 96. 30 S. E. Rep. 492; Owens v. Boyd Land Co., 95 Va. 560, 28 S. E. Rep. 950.
Though in suit to collect assessments to corporate stock from a subscriber, he may set up, under Code, § 3299, the defenses of failure of consideration, fraud in the procurement of the contract, or any other matter which would entitle him to relief in equity, yetitisheld, thatthose defences are personal to him. and do not pass to the transferee of the stock. Lewis v. Berryville Land & Improvement Co., 90 Va. 693, 19 S. E. Rep. 781.
Laches in Repudiating Contract.—Laches does not begin to run against a party fraudulently induced to subscribe to stock, until he is chargeable with notice of the fraud. And mere suspicions or random statements heard in public, or in stockholders’ meetings, do not necessarily constitute notice. But after a subscriber’s suspicions are reasonably aroused, it is his duty to investigate at once. The burden of proof In asserting that the subscriber had notice and was guilty of laches is on the corporation. Virginia Land Co. v. Haupt, 90 Va. 533, 44 Am. St. Rep. 939, 19 S. E. Rep. 168; Weisiger v. Richmond, etc., Co., 90 Va. 795, 20 S. E. Rep. 361; Bosher v. Richmond, etc., Land Co., 89 Va. 455, 37 Am. St Rep, 879, 16 S. E. Rep. 360.
The capital stock of a joint stock company is the basis of its credit, and every one who deals with it has the right to assume that the stock has been paid in full in money, or its equivalent. As against creditors of the company, its stockholders cannot have their subscriptions rescinded on the ground of fraud and misrepresentations in the procurement thereof, unless proceedings for that purpose are commenced not only as soon as the fraud or misrepresentation is discovered, but as soon as the same, by the exercise of due diligence, might have been discovered. The stockholder must be diligent in discovering the fraud, and prompt in repudiating Ms contract after it is discovered. Martin v. South Salem Land Co., 94 Va. 30, 26 S. 16. Rep. 591; Wilson v. Hundley, 96 Va. 96, 30 S. E. Rep. 492.
Affirmance of Contract.—If a party who has been defrauded in the procurement of a contract, elect, on discovery of the fraud, to affirm the contract, his election is final and conclusive. He has but one election to rescind, and, having once elected to affirm the contract, he cannot thereafter disaffirm. Wilson v. Hundley, 96 Va. 96, 30 S. E. Rep. 492.
A person who has been induced by the fraudulent representations of an agent of a company to take shares in it, cannot, after he discovers the fraud, elect to retain the shares and sue the company for damages. Wilson v. Hundley, 96 Va. 97, 30 S. E. Rep. 492.
Remedies against Agents.—If a shareholder in a joint-stock company is debarred from a rescission of his contract by the insolvency of the company, or any other cause, he is without remedy against the company, and is left to his action against the agent who, by his fraudulent representations, induced him to subscribe for the stock. Wilson v. Hundley, 96 Va. 97, 30 S. E. Rep. 492.
3. Capital Stock Not Fully Subscribed.—When, up to the time of trial, the proposed capital stock of a corporation has not been fully subscribed, a subscriber thereto cannot be even liable for assessment on his subscription, unless there is in the article, or in the general law under which the corporation is formed, a provision to the contrary. Norwich Lock Mfg. Co. v. Hockaday, 89 Va. 557, 16 S. E. Rep. 877; West End, etc., Co. v. Claiborne. 97 Va. 734, 34 S. E. Rep. 900.
d. Release from Contract of Subscription.—A release from a contract of subscription to corporate stock can be shown by the acts of both parties to the contract; and any evidence tending to show that the company did not regard a subscriber as a stockholder, or his subscription binding, may be sufficient proof of such release. Stuart v. Valley R. Co., 32 Gratt. 146.
Subscriptions to a company’s capital stock are not released by unacted-upon amendments to its charter. Taylor v. Board of Supervisors, 86 Va. 506, 10 S. E. Rep. 433.
A material change in the purposes of a corporation, as set forth in the prospectus, will release a subscriber thereto from liability, if made without his consent. Norwich Lock Mfg. Co. v. Hockaday, 89 Va. 557, 16 S. E. Rep. 877.
III. Rights of Stockholders.
Rights to Sue on Behalf of Corporation.—A stockholder in a corporation has no right to bring a suit in equity in his own name, or for the benefit of himself and other stockholders, upon a cause of action existing in the corporation, and in which the corporation is itself the proper complainant, except where it actually or virtually refuses to institute or prosecute the suit. It must be averred and proved that application was made to the proper authorities to institute suit and they refused, or that such a state of facts exists that the application itself would be *142 useless, or the facts charged must be such as to show that it is reasonably certain that a suit by the corporation would be impossible. But the suit, when brought, is still the suit of the corporation, the stockholder being permitted to sue in this manner simply to set in motion the judicial machinery of the court. Mount v. Radford Trust Co., 93 Va. 427, 25 S. E. Rep. 244; B. & O. R. Co. v. City of Wheeling, 13 Gratt. 40; Stevens v. Davison, 18 Gratt. 819.
Right to Defend Suit against Corporation.—A corporation must defend a suit brought against it in its corporate name; and a purchaser of stock will not be permitted to do so, unless the corporation has refused to defend. If in such case the officers or agents of the corporation refuse to defend the suit, the court may allow such defense in equity to be made by the stockholders. Park v. Petroleum Co., 25 W. Va. 108.
Right to Enjoin Corporation.—Although a stockholder in a corporation may enjoin it from employing the property or powers of the corporation for a purpose wholly or materially different from that which was designed by the act of incorporation, yet it has no right to enjoin it from doing what is in direct furtherance of the object of its creation, and is for the benefit of all the stockholders as such; though it may be injurious to such stockholder in another character; or the interest of some other person or the public may be injuriously affected by the work about to be executed. B. & O. R. Co. v. City of Wheeling, 13 Gratt. 40; Stevens v. Davison, 18 Gratt. 819; Burr’s Ex’or v. McDonald, 3 Gratt. 215.
As Agent for Other Stockholders.—A stockholder it an incorporated company is not so jointly interested with the other stockholders, or so identified with the corporation, that his unauthorized and unwarranted acts will be deemed theirs, or in any manner bind them, to their detriment. Western M. & Mfg. Co. v. Peytona, etc., Co., 8 W. Va. 407.
Power of Majority to Dissolve.—It was held in Hurst v. Coe, 30 W. Va. 158, 3 S. E. Rep. 564, that a majority of the stockholders of a corporation are not entitled, as a matter of right, toa judicial decree dissolving the corporation, without showing a legal cause therefor; though according to statute the stockholders of a corporation have the absolute right to discontinue the business of the corporation by a vote of the majority of the stockholders at a general meeting thereof.
Title to Corporate Property.—In a court of law, the property and rights of an incorporated company belong to the united association, acting in the corporate name and not to the stockholders. The latter, however, are the real owners; and a technical trust thus arises in their favor which will be protected and enforced in a court of equity. Moore v. Schoppert, 22 W. Va. 283; Park v. Petroleum Co., 25 W. Va. 108.
Where the stock of a corporation is declared to be personal estate, and the certificates are made transferable on the books of the corporation, and it is authorized to acquire real estate, such estate is vested in it as a corporation, and notin the individual shareholders. The certificate of stock is evidence of the right of the owner to his proportion of the profits or dividends, and on the expiration of the charter, to his proportion of the assets remaining after the payment of the debts; and every purchaser of the stock takes it subject to the same liabilities. Barksdale v. Finney, 14 Gratt. 338.
Calls.—In Reilly v. Oglebay, 25 W. Va. 41, itwasheld that a call by the secretary of a corporation, simply on authority of stockholders of one-tenth of the capital stock, was invalid and all proceedings thereunder illegal.
IV. Liabilities of Stockholders.
In General.—To the extent of his stock, each stockholder is liable individually for the debts of the corporation. Where a stockholder pays the debt of the corporation and takes an assignment thereof to himself, he cannot revive that debt by assigning it to a third party. Hardy v. Norfolk Mfg. Co., 80 Va. 404.
In Nimick v. Mingo, etc., Co., 25 W. Va. 184, it was held: (1) That the stockholders of a corporation are individually liable to the creditors thereof, if the same be necessary for the payment of its debts, in addition to their stocks in an amount equal to the stock by them subscribed or otherwise acquired; (2) That this liability is not in the nature of a penalty or forfeiture, but it arises out of the implied promise of the stockholder to assume and discharge the individual liability imposed by the statute, under which the corporation was created; (3) That this liability is not a primary resource or fund for the payment of the debts of the corporation; that it is collateral and conditional to the principal obligation which rests upon the corporation; and is to be resorted to by the creditors only in case of the insolvency of the corporation, or when payment cannot be enforced against it by the ordinary process; (4) That this liability is a security provided by law for the exclusive benefit of the creditors', over which the corporate authorities can have no control; and that this liability is several in its nature, but the right arising out of it is intended for the common and equal benefit of all creditors of the corporation; (5) That in any suit instituted for the purpose of enforcing this liability against the stockholders the corporation is a necessary party.
A subscriber to the stock of a corporation cannot escape his liability to pay his subscription, on the ground that he did not pay the sum required to be paid by statute at the time he subscribed. P., W. & K. R. Co. v. Applegate, 21 W. Va. 172; Stuart v. Valley R. Co., 32 Gratt. 146.
The stockholders of a corporation having directed the directors to create new stock and sell it; and the directors having instead, acquired original stock and sold it, their act may be ratified subsequently by the stockholders, so’ as to render the sales valid and binding upon the purchasers. Crump v. U. S. Mining Co., 7 Gratt. 352, 56 Am. Dec. 116.
If the law authorizes a sale of the stock of delinquent subscribers, and if the sale shall not produce the sum due, then a motion lies against such subscribers for the deficiency. Grays v. Turnpike Co., 4 Rand. 578.
On Fictitious Subscriptions.—Fictitious or colorable subscriptions to stock, made and used with intent to induce others to subscribe, with the secret understanding that no liability shall attach to the subscribers, or that they shall be allowed to withdraw, are as binding on the subscribers as if originally made in good faith, and the existence of such subscriptions does not operate as a release of bona fide subscribers. Wilson v. Hundley, 96 Va. 96, 30 S. E. Rep. 492.
Stockholders Imputed with Notice of Charter and ByLaws.—A stockholder is bound at his peril to take notice of the charter and by-laws of the company of which he is a member. If he pays any installment on his stock, or participates in any meetings of the stockholders after the charter is obtained, he is *143 estopped to deny knowledge of its terms and provisions, however much it may vary from his contract of subscriptions. West End, etc., Co. v. Claiborne, 97 Va. 734, 34 S. E. Rep. 900.
A member of a corporation is bound by an act of assembly varying the terms of the original act of incorporation; such act being passed at the instance of a legally constituted meeting of the corporation, although that individual member was not present. Currie’s Adm’rs v. Mut. A. Soc., 4 H. & M. 315, 4 Am. Dec. 517.
Statute of Limitations as against Stock Subscriptions.—Under the statute regulating assessments of stockholders the statute of limitations begins to run against an action for unpaid assessments, only from the time such assessment is made. Lewis’ Adm’r v. Glenn. 84 Va. 947, 6 S. E. Rep. 866.
In suit wherein a corporation is a party, the decree binds the stockholders, though they be not personally parties; and assessments made, under decree therein, payable to, and collectible by, the trustee of the corporation, may be sued for by him in his own name; and the statute of limitations begins to run against those assessments from the date of the decree. Vanderwerken v. Glenn, 85 Va. 9, 6 S. E. Rep. 806; Hamilton v. Glenn, 85 Va. 901, 9 S. E. Rep. 129.
Issue of Stock at Less Than Par.—The guaranty of a land company that those who subscribe to its stock shall not be called upon to pay more than thirty per cent, of the stock subscribed for, may be valid as between the company and its stockholders, but as between the company and its creditors it is not binding, unless the latter had notice of the guaranty when their debts were contracted. Such guaranty is in fraud of the rights of the creditors, and cannot be enforced to their prejudice. The full amount of the subscription must be paid in money, or money’s worth, if necessary to satisfy the demands of the creditors, who have no notice of a different contract between the company and its stockholders at the time when their debts are contracted. Martin v. South Salem Land Co., 94 Va. 30, 26 S. E. Rep. 591, 2 Va. Law Reg. 743.
V. Transfer of Stock.
In General.—A by-law of a banking corporation, which prohibits a stockholder who is indebted to the bank from transferring his stock without the consent of the board of directors, is void, even though notice of such by-law be endorsed on the certificate of stock. Feckheimer v. Nat. Bank, 79 Va. 80.
An option to purchase stock within three years is enforceable, though not in writing. Seddon v. Rosenbaum, 85 Va. 928, 9 S. E. Rep. 326.
Bank stock standing in the name of the guardian of an infant, may be sold and transferred by the guardian, and the officers of the bank have no right to control or prevent him from transferring it on their transfer book. Bank of Virginia v. Craig, 6 Leigh 426.
The general rule is, that the proper measure of damages for the breach of executory contracts for the sale and delivery of personal property, is the value of the article at the time it should have been delivered, with interest thereon from that date until paid. And there is no distinction, in this respect, between contracts for the delivery of stock, and other executory contracts. Enders v. The Board of Public Works, 1 Gratt. 364.
O married M who owned fifty shares of Clover Hill railroad stock. By a resolution of the company the fifty shares is made seventy, and a certificate for the whole is issued to O. O having no children, makes his will, and after giving to his wife his whole estate for her life, says, "I give to her in fee her Clover Hill stock.” Held, looking to all the provisions of the will and the surroundingcircumstances, M took the seventy shares of stock. Osborne v. Osborne’s Ex’or, 24 Gratt. 392.
Liability of Transferrer. -The assignor of shares of stock is still liable for unpaid subscriptions, whether installments accrue before or after assignment. Hamilton v. Glenn, 85 Va. 901, 9 S. E. Rep. 129.
As against creditor of husband garnisheeing stock, his assignment to his wife endorsed upon the certificate, and reciting that it is for value received, was held not a valid transfer thereof in a case where the evidence shows that he had subscribed for it, that it always stood in his name, and the company’s books evinced no transfer and no payment of the transfer fee; that payment of monthly dues was always by his checks; that recently before the garnishment he had presided at a meeting of the stockholders and mentioned no assignment or proxy; that she had no separate estate and never laid claim to the stock before filing the interpleader. Massey v. Yancey, 90 Va. 626, 19 S. E. Rep. 184.
Liability of Transferee.—In Gray v. Kemp, 88 Va. 201, 16 S. E. Rep. 225, the defendant had sold certain stock to the plaintiff at an agreed price which was paid; but the corporation denied that he owned the stock. The defendant then offered to refund, but plaintiff refused to accept the money, and without unreasonable delay sued for damages for breach of contract. Held, the plaintiffs were entitled to recover the value of the stock, or its highest price in market at any time after demand and refusal.
Where corporate stock has been transferred to a purchaser, by judicial sale, and such sale is subsequently set aside in a suit between an original stockholder and the corporation, the latter can recover the stock issued to the purchaser at the judicial sale. Webb v. City Council of Alexandria, 33 Gratt. 168.
Stock as Security.—It was held in Feckheimer v. Nat. Bank. 79 Va. 80, that § 5, 201 U. S. Rev. Statutes, prohibits banking associations from making loans upon security of shares ol their own stock.
In order to bind a bank whose stock is pledged as collateral, notice of the pledge should be given its president, cashier, or other officer at its place of business, and in the usual course of business. Donnally v. Hearndon, 41 W. Va. 519, 23 S. E. Rep. 646.
Burden of Proof.—Where the answer of the defendant plainly and directly denies, that the plaintiff or any one on its behalf, ever presented a written request from certain alleged stockholders, asking him to convey or transfer certain stock as alleged in the bill, the onus is cash upon the plaintiff to prove the allegation in his bill. Pithole, etc., Co. v. Rittenhouse, 12 W. Va. 313.
VI. Pleading and Practice.
Hultifariousness of Bill.—A bill by a number of stockholders against a corporation, alleging fraud in obtaining subscriptions, etc., is not multifarious because each complainant sets forth a different claim. Carey v. Coffee-Stemming Mach. Co. (Va.), 20 S. E. Rep. 778.
A bill may be framed in a double aspect, but the alternative case stated must be the foundation for precisely the same relief. Stockholders who come into a court of equity and seek to have their contracts of subscription rescinded on the ground that they were fraudulently obtained, cannot in the same bill complain of the malfeasance and misfeasance of the corporate directors in the management of the *144 corporate property, and seek relief which rests upon their relation as stockholders of the defendant company. Such relief must be considered a distinct act of affirmance and ratification of the very transaction which they, in another part of their bill, sought to repudiate. Brown v. Bedford City L. & I. Co., 91 Va. 32, 20 S. 33. Rep. 968.
Allegations in Bill.—G. W. B. and C. entered into an agreement to form a joint stock company for the purpose of mining coal, &c. G. and W. put in 137 acres of land and they all jointly put in another tract of 463 acres, which were to constitute the basis of the company. The capital stock was to be sixty thousand dollars, divided as mentioned in the agreement. It was stipulated in the agreement that G. and W. were to receive from the profits of the first coal sent to market eight hundred and ten dollars of the company’s money as a compensation for the excess in value of the 137 acres over the 463 acres. Before any profits were realized the- lands were sold. Held, (1) G. and W. would be entitled to receive the said sum of eight hundred and ten dollars from the proceeds of the sale of the lands if sufficient to pay them, but the remainder of the stockholders would not be personally liable to G. and W. for the respective proportions of the eight hundred and ten dollars, unless they had actually received the proceeds of the sale of the lands or the profits of the coal sent to market; (2) As the bill of G. and W., to compel the other stockholders to pay their respective proportions of the said sum, did not charge that any profits were received, or that the other stockholders had received' the proceeds of the sale of the lands, it must be dismissed. Bainbridge v. Gehring, 3 W. Va. 240.
An allegation in a bill against the stockholders of a joint stock company that certain persons mentioned in the bill “constitute, as the plaintiffs are informed, the stockholders of said defendant company” must, on demurrer, be taken as true, and is a sufficient allegation that the persons named constituted the stockholders of the company. Martin v. South Salem Land Co., 94 Va. 29, 26 S. E. Rep. 591.
A bill against a corporation and its directors alleged fraud in obtaining the stock subscriptions of the plaintiffs and failure to comply with the corporate charter, stated that plaintiff’s stock had been issued to them and fully paid for, and asked a return of money so paid. Held, that the bill was not demurrable on the ground that plaintiffs sued as stockholders and not as stockholders at the same time. Carey v. Coffee-Stemming Mach. Co. (Va.), 20 S. E. Rep. 778.
Averments in Answer.—Where a suit is brought against a corporation, and a purchaser of the stock of the corporation files his answer in defence of the suit without showing that the corporation has refused to defend the suit, it is not error to strike out his answer. Park v. N. Y. & Ka. Oil Co., 26 W. Va. 486. See especially, monographic note on “Answers,” appended to Tate v. Vance, 27 Gratt. 571.
Joinder of Parties.—Where a large number of persons have been fraudulently induced to become subscribers to a company by identical representations, they may unite in one bill, praying the cancellation of their subscriptions and make the offending company, and its officers and agents, through whom the fraudulent representations were made, defendants. But creditors of the company cannot be united in the same suit. Their rights and interests are not only diverse, but wholly antagonistic to those of the stockholders. There is an “irrepressible conflict” between the two classes, and if united in the same bill, it will be multifarious for misjoinder of complaints. Brown v. Bedford City Land & Imp. Co., 91 Va. 31, 20 S. E. Rep. 968; Bosher v. Richmond & Harrisonburg Land Co., 89 Va. 455, 16 S. E. Rep. 360, distinguished.
Under Code 1873, chapter 57, § 26 (Code 1887, § 1103), a corporation, though dissolved or expired, may be sued to enforce its liabilities, and its stockholders are not necessary parties. Hamilton v. Glenn, 85 Va. 901, 9 S. E. Rep. 129.
A corporation being a defendant to a suitin equity, the object of which is to have it declared null, the holders of stock in it are not proper parties to defend the suit. But if in such a case the holders of the stock claiming that if the corporation is annulled they have equitable interests in the property, may be admitted as parties defendants to protect their interests. Washington, Alex. & Georgetown R. R. Co. v. Alex. & Wash. R. R. Co., 19 Gratt. 592.
All the stockholders are necessary parties to a bill filed for the purpose of winding up the affairs of a corporation. But where the object of the bill is to subject corporate assets, including unpaid subscriptions to stock, to the payment of corporate debts, they are not indispensably necessary, though it would be more convenient to have before the court all who have not paid in full, except such as are unknown, insolvent, or beyond the jurisdiction oif the court. It is not the duty of creditors to marshal the assets, or adjust the equities between the stockholders. If the stockholders who are parties desire it, they can have the others brought in "by proper proceedings for that purpose. Martin v. South Salem Land Co., 94 Va. 29, 26 S. E. Rep. 591.
Action for Recovery of Stock Subscription.—The Act of Assembly approved December 19, 1895, entitled “An Act to prescribe the mode by which unpaid subscriptions to joint-stock companies may be recovered by said companies, their receivers, or assignee,” has no application to a suit by creditors of such companies to recover stock subscriptions, because they are not embraced in the title of the Act. Nor does it apply to a suit in which there has been, before the approval of the Act, a decree entered fixing the rights of the parties, requiring stockholders to pay further sums on their subscriptions, and giving executions therefor, although further proceedings in the case were necessary in order to complete the relief for which the suit was instituted. Such a decree is a final , decree on the merits within the meaning of the Act, and .the case is exempt from the operation of the Act by its very terms. Martin v. South Salem Land Co., 94 Va. 28, 26 S. E. Rep. 591.
Removal of Causes to United States Courts.—The plaintiff and the defendant corporation being corporations of this state, the owners of the stock though nonresidents, are not entitled to have the cause removed to the United States court, to have the question of the validity of the corporation decided. Wash., Alex. & Georgetown R. R. Co. v. Alex. & Wash. R. R. Co., 19 Gratt. 592.
Equity Jurisdiction.—Equity has jurisdiction where the relief asked for involves accounts, commissioners, questions of fraud, and cancellation of subscription to stock of a corporation. Carey v. Coffee-Stemming Mach. Co. (Va.), 20 S. E. Rep. 778.
A bill in equity to ascertain and determine the extent of the individual liability of the stockholders of a foreign corporation can not be sustained. Nimick v. Mingo, etc., Co., 25 W. Va. 184.