## Richmond.

### LINHART v. FOREMAN'S ADM'R AND ALS.

#### May 3d, 1883.

1. FRAUD—*Rescission—Repayment—Case at bar.*—F., G. and J. planned to inveigle L. into purchasing certain land. They knew he could not get a good title to it. They had been informed that he would not purchase unless that could be done. They misrepresented material facts, as to which he, being at a distance, had not equal means of information, and for a true statement whereof he had a right to rely on them. On a bill by L. against F., G. and J., for rescission of the contract and deed whereby F. conveyed the land to L., and for repayment of $3,500, cash paid, and for surrender of his bond for $1,500, deferred payment, on the ground of fraudulent misrepresentation or false representation as to validity of title and freedom from encumbrance of the widow's dower. HELD:

    1. A false representation of a material fact constituting an inducement to the contract, on which the purchaser had a right to rely, is a ground for the rescission of the contract by a court of equity, although the party making the misrepresentation was ignorant as to whether it was true or false; and the real enquiry is, not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true and was misled by it into the contract. In such case, whether the false representation was innocently or wilfully made, the effect is the same on the purchaser.

    2. To entitle the person making the misrepresentation to defend on the ground that the purchase ₒwas not induced by it, he must demonstrate that it was not relied on by the purchaser.

    3. This is a case of actual fraud, which entitles L. to relief in equity by rescission of the contract and return of the money and bond given for the land.

Appeal from decree of circuit court of Charlotte county in

suit of James D. Linhart against Thomas H. Foreman, T. W. Greer and A. G. Jeffress.

The object of this suit was to rescind the contract and deed of 20th October, 1875, whereby said Foreman and wife conveyed 1,112 acres of land to said Linhart, and to have repaid the sum of $3,500, which he had paid, and to have returned his bond for $1,500 given for the balance of the purchase money, on the ground that the defendants induced the complainant to pur-·chase the land by fraudulent misrepresentations, or false representations as to the validity of the title and the freedom of the land from the encumbrance of the dower of the widow of Thos. Pollard, deceased, in the said tract.

The circuit court refused to rescind the contract, and dismissed the bill at the complainant's costs, and he appealed to this court. The view of the evidence taken by this court appears in the opinion of the court.

*M. M. Martin,* and *W. W. Henry,* for the appellant.

*F. D. Irving,* and *R. T. Hubard,* for the appellees.

HINTON, J., delivered the opinion of the court.

From the record it appears that the appellant, James D. Linhart, a resident of Pennsylvania, attracted by advertisement of an association known as the "National Virginia Settlement Association," of which A. G. Jeffress, one of the respondents in the court below, was secretary and treasurer, another, Thos. W. Greer, was a director, and one other of the respondents, John W. Foreman, was manager, visited the county of Charlotte, Va., in the fall of 1875, with a view to purchase a tract of land. That amongst the various tracts of land offered him by Foreman was one of 1,112 acres, called "the Thomas Pollard Tract," for which he began to bargain; that he was told at the time that this tract of land had been sold by A. G. Jeffress, as com-

missioner of Charlotte circuit court, to Foreman, who had not completely paid for it, and that the widow of Thomas Pollard, deceased, was entitled to a dower interest in the tract; that the appellant refused to purchase the tract unless a pefectly good and complete title was given to him, free from the widow's dower and from all other claims of every kind whatsoever; that Foreman thereupon carried him to see Jeffress, who, as commissioner, he claimed, had sold the land to him, and who, Foreman said, would arrange the matter of the dower with the court so that the deed from him (Foreman) should convey to the appellant a clear and perfect title.

A contract in writing was executed by the appellant and Foreman, which specifies $5,000 as the purchase price of the land, and provides, to follow the language of the contract, that "$3,500," part thereof, "should be paid on or before the 1st day of December, 1875, on delivery of a warranty deed for said property free and clear of all encumbrance, and that the balance of $1,500 should be paid at any time thereafter when full possession is given to the party of the second part." In a letter dated October 13, 1875, Foreman informs Linhart that " we have got a decree from the court ordering the commissioner to make a deed to the land, and also to clear the place of encumbrance by the 1st of January next. We will meet at the courthouse on the 20th to make the deeds, at which time they will be sent to you with a copy of the decree of the court, so that you can see how the decree is    Mr. North, guardian of the widow, will also make a deed to you as guardian, so that you will have a perfect title, clear of all encumbrance."

The decree referred to in this letter orders " A. G. Jeffress, who is appointed a special commissioner for the purpose, to convey to John H. Foreman, the purchaser, the 1,112 acres of land * * * by proper deed, and to deliver possession thereof to him on the 1st day of January, 1876."

Soon after the execution of the contract and the reception of this letter the appellant received a letter from Jeffress, dated

October 22d, 1875, in which he says: "This is to inform you that I have made a deed (in accordance with a decree of our circuit court) of the land. A copy of the decree has been sent you. The dower has also been arranged, so that Mr. Foreman's deed is a valid one in every respect. By sending the check, your desire can be consummated and your title good." At the same time he received this letter Foreman wrote him: "Mr. Jeffress made me a deed as ordered by the court, which he will notify you of if you desire it. Mr. Greer secured widow's dower with the court, so the court makes a clear title to me, and do the same with you, as you see by the decree and deed which I send to Mr. Gill," who was the appellant's neighbor and attorney in the State of Pennsylvania. "I also enclosed a condition bond for the deferred payment. * * * I have taken the trouble to have everything right, which I believe I have got done to a dot," &c.

Under these circumstances the appellant handed his certified check to Mr. Gill, his attorney, with directions to enclose it to Foreman. And on the 10th December, 1875, Greer writes, acknowledging the receipt thereof, and in this letter he states that the land was conveyed by Jeffress, commissioner, to Foreman, and by Foreman to Linhart, in order that Linhart might get a deed with general warranty.

The appellant, believing he had a perfect title, rented the farm to a gentleman named Scott, who, in January, 1876, moved with his family from Pennsylvania to Charlotte county, Va., for the purpose of working it. He, however, found one Dow in possession, claiming it as his by reason of a purchase from Greer, who he (Dow) insisted was the real purchaser from the court. And, as a consequence, Linhart has been forced to pay $400 for loss sustained by Scott by reason of his fruitless trip. And the fact is, that at the first sale of the land Greer became the purchaser at the price of $2.51 per acre, and then sold it to Dow. And upon Dow's failing to pay, it was resold, when Greer, who was the real purchaser, induced Foreman to bid it in as the nominal purchaser.

It further appears, from the deposition of Jeffress, that the check of the appellant was used to pay the amount due Jeffress, commissioner, by Greer, and that the balance of $1,500 due on Linhart's contract of purchase was assigned to Jeffress to secure him for general indebtedness. It also appears that Mrs. Pollard's dower in all of her husband's real estate had been laid off in this tract, a fact which was not known to the appellant at the time of the purchase. And this embraced 464½ acres out of the 1,112 acres.

There are many other facts in the record inconsistent with good faith and fair dealing towards the appellant, but it is deemed unnecessary to set them out, as the circumstances already detailed are decisive of the case.

The appellant, finding it impossible to get a perfect title, finally brought his bill against Foreman, Jeffress and Greer, charging that they had perpetrated a fraud upon him, and asking that the contract of purchase might be rescinded, and they be required to repay him the $3,500, with interest from the 20th day of December, 1875, and that his bond, given for the deferred payment of $1,500, be required to be surrendered. This bill was answered by all of the defendants. And in the hearing on the 28th day of September, 1880, the circuit court of Charlotte county entered the decree refusing to rescind the contract, and decreeing against the appellant.

This decree is plainly erroneous.

The well settled doctrine in the United States in regard to contracts brought about by false or fraudulent misrepresentations is this, " that a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had the right to rely, is a ground for a rescission by a court of equity, although the party making the representation was ignorant whether it was true or false ; and the real inquiry is not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true and was misled by it into entering into the contract. For in such case, whether the false misrepresentation was innocently made or knowingly

made, the effect is the same upon the purchaser." 2 Minor's Inst. 813; Adams' Eq. s. 117; n. 2 and cases cited; *Grim et. al.* v. *Byrd*, 32 Gratt. 300. And Kerr in his book on Fraud and Mistake goes so far as to say that it is not necessary that the misrepresentation should be the sole cause of the transaction, it is enough if it may have constituted a material inducement. "If," says he, at page seventy-five, "any one of several statements, all in their nature more or less capable of leading the party to whom they are addressed to adopt a particular line of conduct, be untrue, the whole transaction is considered as having been fraudulently obtained, for it is impossible to say that the untrue statement or inducement may not have been precisely the one that turned the scale in the mind of the party to whom it is addressed. And the man who has made a false representation in respect of a material matter must, in order to be able to rely on the defence that the transaction was not entered into on the faith of the representation, be able to prove to a demonstration that it was not relied on."

In *Crump* v. *United States Mining Co.*, 7 Gratt. 352, it was decided that in written proposals of sale for stock in a mining company, if the representations contained therein are false as to any material fact by which the purchasers have been misled to their injury, and in which they are presumed to have trusted to the vendors, the contract founded on such misrepresentations is void, whether the vendors knew the representations to be false at the time they were made or not, and whether made with fraudulent intent or not.

This short statement of the case and the law applicable thereto, renders detailed examination of the evidence unnecessary. It must be patent from any and every aspect in which the case may be viewed, that this was a deliberate and preconcerted plan on the part of Jeffress, Greer and Foreman, to inviegle the appellant into purchasing this land, although they well knew he could not get a good title to it, and had been

informed that he would not purchase unless that could be done. In order to accomplish this they have designedly misrepresented material facts, as to which the appellant, who was at a distance, had not equal means of information with them, and for a true statement of which he had a right to rely upon them. It is a case of positive fraud, which entitles the appellant to the interposition of a court of equity for his relief. Bigelow on Fraud, 401; 1 Story's Eq. Jur. 192.

The decree of the circuit court must be reversed, the contract of purchase be rescinded, the bond of $1,500 be surrendered to the appellant, and a decree for the sum of $3,500, with interest from the 20th day of December, 1875, must be rendered in favor of the appellant against the appellees—Jeffress, Greer and R. J. Gaulding, sheriff, and as such administrator of John H. Foreman, deceased.

The decree is as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in refusing to rescind the contract made by the appellant for the purchase of the tract of land in the bill mentioned and described. It is, therefore, decreed and ordered, that the said decree be reversed and annulled, and that the appellee, the said R. J. Gaulding, sheriff and administrator of John H. Foreman, deceased, out of the estate of his intestate, and the other appellees, out of their own estate, pay to the appellant his costs by him expended in the prosecution of his appeal and *supersedeas* here. And this court, proceeding to render such decree as the said circuit court ought to have rendered, it is decreed and ordered that the said contract of purchase be and the same is hereby rescinded; that the bond for

Decree.

fifteen hundred dollars be surrendered to the appellant, and that the appellee, the said administrator of John H. Foreman, out of the estate of his intestate, and the other appellees, out of their own estates, pay to the appellant thirty-five hundred dollars, with six per cent. per annum interest thereon from the 20th day of December, 1875, until payment, and also his costs by him about his suit in said circuit court expended, &c. Which is ordered to be certified to the said circuit court of the county of Charlotte.

DECREE REVERSED.