## Wytheville.

## RORER IRON CO. v. TROUT AND WIFE.

### June 16th, 1887.

1. FRAUD—*Rescission—Facts—Opinions.*—False representations of material fact constituting inducement to contract, and on which a party has a right to rely, is ground for rescission in equity. Matter of opinion may amount to affirmation and be inducement to contract, and will be ground for rescission, especially where parties deal not on equal terms, and affirmant has, or is presumed to have, means of information not equally open to the other party.

2. ESTOPPEL IN PAIS—*Case at bar.*—Estoppel *in pais* is one that arises from the acts, conduct or declarations of a person, whereby he designedly induces another to alter his position injuriously to himself. But the acts, &c., alleged as such estoppel must be executed, and not merely executory. *Case at bar* is one where the acts, &c., alleged as an estoppel was held not to be an estoppel.

3. APPELLATE COURT—*Exclusion of evidence.*—Though the chancellor has erroneously excluded evidence, yet if this court upon full consideration of all the evidence, including that excluded, sees no error in the decree appealed from, it will affirm it.

4. PURCHASERS FOR VALUE WITHOUT NOTICE are not affected by latent equities; and grantees from such purchasers stand in the same position as their grantors, although such grantees were affected with notice at the time of the grant.

5. IDEM—*Mode of defense—Essentials.*—This defense may be made by plea or by answer. But answer, as well as plea, must aver all the essentials of the defense, viz: (1), That they are purchasers for valuable consideration *actually paid;* (2), that they have received, or are best entitled to receive, conveyance; (3), that their grantor was in possession of the property at the time ; and (4) that these facts happened before notice of the adverse claim. But this defense can not be made unless it is set up by answer or plea.

6. IDEM—*Notice—Possession.*—Notice may be actual or constructive, and.

any fact which would put a reasonable person on enquiry,—such as the possession being in some person other than the grantor,—is enough to affect purchaser with notice.

7. CASES REVIEWED AND EXPLAINED. *Carter* v. *Allen*, 21 Gratt. 244.

This is an appeal from a decree of the circuit court of Roanoke county, rendered March 28th, 1885, in the chancery cause wherein Jacob M. Trout and wife were complainants, and A. Lewis, M. P. Preston, E. G. McClanahan, J. C. Green, F. J. Chapman, F. Rorer, S. Coit, and Rorer Iron Company, defendants.

The suit was instituted August 25th, 1882, against the two first named defendants only; the others having been made parties afterwards on the petition of said defendant company. The object of the suit was to annul a deed of lease executed by said Trout and wife on the twenty-ninth of April, 1881, granting to said A. Lewis and M. P. Preston the privilege for twenty years to mine and haul off all iron and other minerals on their tract of land, the lessees to pay ten cents a ton for all minerals obtained from the premises, and to commence developing in sixty days from the date of the lease. The bill avers, as grounds for such annulment, that the lessees, in order to induce the complainants to execute the lease, made to them certain representations which were material, and which were relied on by the complainants as true, but which were false, and thereby procured the lease; that the representations were that certain things existed, the existence whereof was a matter peculiarly within the lessees' knowledge; that these things were that the lessees were about to engage on a large scale in the business of mining, transporting to market, and selling iron ores; that they had made, or were about making extensive preparations; that they intended to set to work to mine complainants' ores a large force, and employ as many as twenty wagons to haul the ore; that their preparations or means would enable them to transport and ship

as much as from one hundred to five hundred tons per day; that they would develop in sixty days and go to mining and hauling directly afterwards, and that the bonus of ten cents a ton, which they would allow him, would yield complainant an income of at least ten dollars a day, which he might draw every night, if he chose.

The record discloses the fact that said representations were made by Lewis in the presence of Preston, at the house of the complainants, on the twenty-ninth of April, 1881, just preceding the drawing and signing of the deed of lease. The alleged representations were deposed to by the complainant, Jacob M. Trout, and by his daughters, Mrs. Engleman and Miss Laura Trout, all of whom substantially agree; and their statement is supported in an important particular by George Wertz, who deposed that Lewis told him that he, Lewis, had to commence delivering ore from complainants' land within sixty or ninety days.

Preston, in his own deposition, said that he made no such statements; that he was writing at the time the conversation was going on between Lewis and the complainants, and paid no attention to it. Yet in his answer to the bill he denied its averments as to those representations. On the contrary, Lewis, who is alleged to have made the representations, did not answer the bill, but let it go for confessed as to himself. Nevertheless, he gave his deposition, in which he denied those averments, yet admitted that during most of the time he was at complainants' house Mrs. Engleman and her sister were in the porch, close enough to hear the conversation. It is in evidence, and not denied, that the lessees had made no such preparations and had no such means to mine, transport and market the minerals, and that they did not mine or attempt to mine any ores on the complainant's land or pay him any such bonus at any time before the institution of this suit, nor any one else for them.

It appears from the record that by deed of October 21st, 1881, Lewis and Preston exchanged one undivided fourth of the Trout lease and of six other leases upon adjacent lands, with E. G. McClanahan, for two-thirds of fifty acres of mineral lands also adjacent; and that by deed of same date they then conveyed one undivided fourth of the seven leases and fifty acres of mineral land to F. J. Chapman and J. C. Green; and that by deed of July 4th, 1882, Lewis conveyed his remaining fourth interest in those leases and land, and other lands, to F. Rorer.

It also appears that on the second of September, 1882, Chapman and Rorer, knowing of this suit, got J. M. Trout to promise, as.they say, "to dismiss" this suit, and to sign a note addressed to his own counsel directing him "to dismiss" it, and stating it had been "satisfactorily settled," and gave J. M. Trout an order on McClanahan, who was absent, for fifty dollars, which note was delivered, yet the suit was not dismissed, but only continued; and which order was never presented for payment, nor paid, but was returned. J. M. Trout says he only promised "to continue the suit till the next spring," and signed no contract of any sort, and received no money, and merely signed, without reading, a note to his own counsel, who had the suit continued with his approbation; and that he returned the order without attempting to collect it. The note, however, did not literally direct the counsel either to dismiss or to continue the suit, but did direct him " to stop the proceedings," and did state that the suit had been " satisfactorily settled," and was handed to the counsel by Mr. Ballard, who, it seems, was acting as attorney for Chapman and others, and was practicing in said circuit court, and their counsel in this cause. It does not appear that at the ensuing term any motion was made to dismiss this suit, or that any opposition was offered to its continuance.

It also appears, by deed dated ninth September, 1882,

but not recorded until the fifth of October of that year, that Preston, McClanahan, Chapman, Green and Rorer conveyed the said seven leases (including the Trout lease here in question) and the said fifty acres of mineral land, and other lands and leases, to one Samuel Coit. All of these parties knew of the pendency and purpose of this suit, and knew, or had opportunity to know, that it had not been dismissed; though it is not disclosed by the record that it was proved or even alleged that Coit was present, or that his name was mentioned at the transaction of second of September, 1882, or that Trout's note to his counsel was ever exhibited to Coit, or that Trout had ever seen or heard of him before he received the said conveyance. And, lastly, it appears that by deed of January 18th, 1883, Coit conveyed the said leases and mineral lands to the Rorer Iron Company.

At the April term, 1883, this corporation filed its petition in this suit. It recited the Trout lease of April 29th, 1881, and the several successive alienations, whereby it became sole owner. It stated that after this suit was brought, J. M. Trout had, for *fifty dollars* then and there paid, promised McClanahan and his co-tenants to dismiss the suit, and by an order, signed by him, had directed his counsel to dismiss it, of all of which the corporation claimed to have had notice before the conveyance of eighteenth of January, 1883, and relied on such promise as an estoppel to this suit. The petition then prayed that said corporation and the intermediate alienees be made parties, and that J. M. Trout "be specially required to state if the allegations of the petition in reference to the dismissal of this suit are true."

To this petition J. M. Trout filed his answer, to which the corporation replied generally. In response to the special inquiry, J. M. Trout pronounced the allegations in reference to the dismissal of this suit *untrue,* and repeated his statement as already given. Accordingly, the bill was

amended by this addition: " And by direction of the court the Rorer Iron Company, F. J. Chapman, E. G. McClanahan, J. C. Green, F. Rorer, and Samuel Coit are made parties to this bill, and are charged with acquiring the said lease subject to all the infirmities of the title thereto of the original lessees, Lewis and Preston, and are required to answer the same in solemn form."

The company filed its demurrer, which was overruled, and also its answer denying the alleged misrepresentations of Lewis and Preston whereby, the bill averred, they had procured the Trout lease, and gave their account of the circumstances attending the execution of that lease. But the answer did not set out the successive alienations whereby it became sole owner of said lease. But the company gave its narrative of the transaction of September 2d, 1882, and relied on it as an estoppel to this suit. And in giving that narrative the company merely mentioned that McClanahan, Green, Chapman, and Rorer had *purchased* the Trout lease, Preston still retaining an interest therein; and proceeded to say that "a short time thereafter," Coit, being informed that this suit had been compromised and settled, and being informed of the terms, had purchased, on fifth October, 1882, the interests of McClanahan and others in said lease, and that subsequently the Rorer Iron Company, relying on the same assurances of compromise, purchased the said interest. It did not claim that it was a purchaser for value without notice; nor that its immediate grantor was such purchaser; nor that his grantors were such purchasers. In a word, the company did not set up the defense of "*purchaser for value without notice.*" It even failed to allege any connection between McClanahan, Chapman, and Green with Lewis and Preston. Nor did it allege that *either of the complainants* gave Coit the information, or the company assurances, that this suit had been, or would be, compromised and settled.

At the October term, 1884, there was filed what purports to be the joint and several answer of Rorer, McClanahan, Chapman and *Green;* but it was signed and sworn to only by the three first, and not by Green. This answer does not deny that the respondents had knowledge that from the date of the recorded lease of April 29th, 1881, up to and far beyond the dates of the conveyances to them, no ore had been mined on Trout's land under that lease, a fact elsewhere proved and admitted. They do aver that they were purchasers for value without notice of the matters alleged in the bill; yet they do not allege that, at the date of the conveyances to them, their grantors, Lewis and Preston, were *in possession* of the premises conveyed; but they claim to have paid the purchase money, though it was proved, and admitted elsewhere, that Rorer's part had not been paid. Nor do they allude to Coit or to the Rorer Iron Company in any way whatever, either as their alienees or in any other character. And they do not refer to the alleged promise of J. M. Trout to dismiss this suit, or to any other ground of estoppel to its prosecution.

As late as February 28th, 1885, and just before this cause was heard in vacation, Samuel Coit's counsel, with the consent of the complainants' counsel, filed his unsworn answer, relying in general terms upon the facts set forth in the answer of the Rorer Iron Company and of McClanahan and others, and waiving the service of process. But he was not examined as a witness in the cause, nor did he appeal from the decree therein. Lewis and Preston were examined only as to what occurred about the execution of the lease, and they were objected to as incompetent to testify; J. M. Trout, the other party to the transaction, having been objected to as incompetent, his wife being a party to the suit and interested.

McClanahan deposed that he never paid, but would have paid, the order drawn on him for fifty dollars had it been

presented; that the Rorer Iron Company commenced to build their line of railroad from the N. & W. R. R. to their mines, a distance of five and a half miles, in January, 1882; that it does not touch the complainant's land; and that no ore was mined on said land until the eighth of November, 1883, the day next before the day on which he testified, when *one load* was taken out. J. H. Sykes testified that the railroad was commenced in October, 1882. F. Rorer, P. H. Rorer, and Chapman in his first deposition, testified only as to the transaction of September 2d, 1882, with J. M. Trout, who was objected to as incompetent, and Chapman and F. Rorer being parties to the transaction and to the suit, were also objected to as incompetent. But Chapman deposed a second time, and as late as twenty-eighth February, 1885, and said that McClanahan had delivered possession of the fifty acres of land which, by the deed of twenty-first October, 1881, he had exchanged with Lewis and Preston for one undivided fourth of the said leases, and that he (Chapman) had paid the entire purchase money for said undivided fourth, which by deed of the same date those three had conveyed to Green and himself, before notice of the complaints of fraud against the lessees, Lewis and Preston. But this witness also testified, and it was admitted by the company's counsel, that F. Rorer had never paid the entire purchase money to Lewis for the one undivided fourth conveyed to him by the deed of fourth July, 1882; and that Samuel Coit had never paid the entire purchase money for the said leases and land conveyed to him by McClanahan and others, by the deed of September 9th, 1882. Nor was it proved that the Rorer Iron Company had paid the entire purchase money to Coit for the leases and lands aforesaid, which he conveyed to said company by the deed of eighteenth January, 1883.

In vacation, on the twenty-eighth of March, 1885, the said circuit court pronounced the decree complained of,

whereby it was held that "the lease which was executed by the complainants twenty-ninth April, 1881, devising to the defendants, Lewis and Preston, a certain tract of 391 acres, more or less, of land, for the term of twenty years, be and the same hereby is cancelled, except as to the one undivided half thereof which passed through the hands of F. J. Chapman, J. C. Green and E. G. McClanahan, who were *bona fide* purchasers for valuable consideration without notice of defect of said half interest, into the hands of the defendant, Samuel Coit, and thence into the hands of the defendant, the Rorer Iron Company; also that the complainants recover of the defendants, the Rorer Iron Company, Samuel Coit, F. Rorer, A. Lewis and M. P. Preston, their costs by them about the prosecution of their suit in this behalf expended; and that the defendants, F. J. Chapman, J. C. Green and E. G. McClanahan, recover of the complainants their costs by them about their defense in this behalf expended.

"Before the hearing of the cause and rendition of said decree, the defendants excepted to the competency of the complainant, Jacob M. Trout, as a witness in the cause, for the reason that his wife was a party to this suit; and the complainants excepted to the competency of the defendants, F. J. Chapman, F. Rorer, M. P. Preston and A. Lewis; and the court sustained the exceptions to the competency of J. M. Trout or wife to testify in the cause, and also excluded the testimony of Lewis, Preston, F. Rorer and F. J. Chapman, so far as they testified to transactions between the complainants and themselves; but the court heard and decided the case upon all the other evidence in the record."

From said decree of March 28th, 1885, the Rorer Iron Company alone applied for and obtained an appeal and *supersedeas.*

*Penn & Cocke,* for the appellants.

*G. W. & L. C. Hansbrough,* for the appellees.

RICHARDSON, J., after stating the facts in the foregoing language, delivered the opinion of the court.

1st. The first assignment of error is, that the bill attempts to set up a cotemporaneous parol agreement, essentially different from and in conflict with the written agreement which was signed and sealed by the parties, for which reason it is insisted the demurrer should have been sustained.

This assignment is clearly founded on a misconception, and is wholly untenable. The bill does not set up a different agreement from that contained in the deed of lease, but avers that the deed of lease was itself procured by fraudulent misrepresentations. These representations were of material things well calculated to, and doubtless did, induce the complainants to execute the lease to Lewis and Preston, thereby seriously encumbering a very valuable property without any corresponding benefit to the lessors. The false representations thus made by the lessees, and by means of which an unconscionable advantage was taken of the lessors, were of matters peculiarly within the knowledge of the lessees, and on which the lessors relied and acted, as they had the right to do; and they were deceived and injured by them, because they were false. These false representations were not held out as opinions merely, but were positive affirmations especially adapted to the end in view, which was to obtain the lease of the mining privileges aforesaid. By these means they obtained the deed of lease, but the lessors got nothing in return. And it is on this ground that the suit was brought to annul the deed. It is of every-day occurrence that courts of equity cancel

contracts on such grounds. See 1 Story's Eq., § 193, note; *Smith* v. *Richards*, 13 Peters 26; Adams' Eq., p. 177; 2 Parsons on Con. 177; *Grimm* v. *Byrd*, 32 Gratt. 302; *Linhart* v. *Foreman*, 77 Va. 540. In the last named case, at page 545, Hinton, J., said: "It is not necessary that the misrepresentation should be the sole cause of the transaction; it is enough that it may have constituted a material inducement." And in *Low* v. *Trundle*, 78 Va. 65, the same judge said: "If one represents as true what is false, in such a way as to induce a reasonable man to believe it, and the representation is meant to be acted upon, and he to whom the representation is made, believing it to be true, acts on it, and thereby sustains damage, there is ground to support an action of deceit at law, and to found a rescission of the transaction in equity."

It matters not whether the party making the representation knew it to be false or not, so the other party relied and acted on it, as he had a right to do, without further enquiry. *Brown* v. *Rice*, 26 Gratt. 473; *McMullen* v. *Saunders*, 79 Va. 356.

2d. It is assigned for error that "the bill should have been dismissed at the hearing upon the complainants' own testimony."

This assignment presents in a double aspect the proposition announced in the first assignment of error. In one sense, it imputes error to the circuit court in overruling the demurrer and holding that the allegations set forth in the bill made a proper case for equitable relief. In the other sense, it imputes error to that court in holding that the case made by the bill had been sustained by the evidence. The first aspect of the contention has been already sufficiently considered. But it is insisted for the appellant that the alleged representations were of matters of expectation or opinion only, and not of matters of fact; and Kerr on F. & M., p. 82, is cited as authority for the position

that such representations "go for nothing, though they may *not* be true, as a man is not justified in placing reliance on them." But, on pp. 80-1, the same author says: "No man can complain, that another has relied too implicitly on the truth of what he himself states." And so, too, this court held in *Hull* v. *Fields & Thomas*, 76 Va. 594.

In *Grimm* v. *Byrd, supra*, Staples, J., said: "But even a matter of opinion may amount to an affirmation, and be an inducement to a contract, especially where the parties are not dealing upon equal terms, and one of them has, or is presumed to have, means of information not equally open to the other."

However, it is only necessary to recall the representations already set forth, in order to refute the contention that they are merely of "such matters of expectation and opinion as go for nothing, though untrue." Briefly restated, the case in hand is this: The lessees, Lewis and Preston, go to the lessors, Trout and wife, representing that they are about entering upon extensive operations in mining and marketing ores; that they have the means at hand for successfully working a force capable of mining and transporting such a quantity of ore daily that the royalty thereon would, at ten cents per ton, yield the owners of the property not less than ten dollars per day, collectible *every night*, if desired, and promising to commence operations in sixty days. Upon these representations they secure a lease for twenty years, but utterly fail to comply with their promises, and, when sued for a rescission of the contract thus procured, they come saying for defense, "these representations were mere matters of opinion, and not representations made to induce the contract, or upon which the lessors had a right to rely." To countenance such a defense would be in effect to absolve men from that which is the chief bond of society—open, honest dealing between man and man.

That the averments of the bill that said lessees made these representations are true, satisfactorily appears from the evidence in the cause; and that they were relied on and chiefly induced the lessors to make the lease, which has proved so disastrous to them, cannot be doubted by any impartial mind. These representations were made immediately previous to the execution of the lease, and the fact that they were not embodied in the writing makes them none the less reprehensible, or less likely to deceive and cheat. And certain it is, they were the inducements by which the lease was obtained. Nor are they in conflict with anything in the written instrument of lease. The lease was for a term of twenty years; yet, looking to its nature and object, it cannot be contended that the lessees had the option to work or not to work the ore mines for an indefinite time, and thus convert what was designed to yield a handsome daily income to the lessors into a mere barren incumbrance on his land, a cloud on his title, an incubus and a manacle which would oppress him and destroy the marketable value of his land. No lease of land for a rent, for a return to the landlord out of the land which passes, can be construed to be intended to enable the tenant merely to hold the lease for purposes of speculation, without doing and performing in connection therewith what the lease contemplated. Such a construction would indeed make all such contracts a snare for the entrapment and injury of the unwary land-owner. A man buying and paying for land may do with it as he likes—work it, or let it lie idle. But a tenant to whom land passes for a specified purpose has no such discretion; he must perform what he stipulated to do; and if he has obtained the lease by misrepresentation and fraud, the lessor may have it rescinded in equity. For these reasons this assignment is untenable.

3d. The third assignment is, "that the circuit court erred

in *not* holding that the complainants were *estopped* from setting up their claim against the appellant by J. M. Trout's promise of September 2d, 1882, to dismiss this suit." Of this transaction the version of both parties has been given in the statement of the case. The admission or the exclusion of the testimony as to it of Chapman and F. Rorer, and also of J. M. Trout, cannot alter the character of that transaction, whichever version may be adopted. Beyond all doubt it was only inchoate and executory, and not consummated and executed. This suit was not dismissed, but was merely continued to the then next term. And the order for the fifty dollars was not presented or paid, but was returned unpaid. This transaction, then, was not an accord and satisfaction of this suit. "Accord is a satisfaction agreed upon between the party injuring and the party injured, which, *when performed,* is a bar to all actions upon the same account." 3d Bl. Com. 315. This is a suit to annul a specialty, and the cause of action could not be discharged by an agreement of less dignity. *Mitchell* v. *Howley,* 4 Denio, 414. "Accord executory is no bar to the prosecution of an action. Accord with tender of satisfaction is insufficient." *Ibid,* and *Brooklin Bank* v. *De Grauw,* 23 Wend. 342. "Accord to be good, must be executed." *Russell* v. *Lytle,* 6 Wend. 390; *McKean* v. *Reed,* Littell's Select Cases, 395.

However, the appellant does not contend that this transaction was a settlement of this suit by accord and satisfaction, but only that it estopped the complainants from persisting in its prosecution. If an estoppel, it is an estoppel *in pais,* "which is one that arises from the acts, conduct or declarations of a person by which he *designedly* induces another to alter his position injuriously to himself." 1 Bouv. L. D. 541. It is founded in fraud. Bispham's Eq, § 282; Bigelow on Estoppel, § 437.

But this promise to stop the proceedings in this suit was

never executed. In *Gerrish* v. *Proprietors*, 26 Maine, 384, the supreme court of that State said : " That was but an executory agreement never executed. Such an agreement does not estop a party to it from acting in such a manner as to violate its stipulations," citing *Gibson* v. *Gibson*, 15 Mass. 106, and then continued : " That was not a sealed agreement, and one cannot be barred by an estoppel of his right to an estate but by deed of record," citing *Whitney* v. *Holmes*, 15 Mass. 152.

In its answer to the bill, the appellant company stated its version of said transaction, to which it is not pretended that Coit or itself was a party, or was present at its occurrence, and adds, that a short time thereafter Coit, being informed that this suit had been compromised and settled, purchased the interest of McClanahan and others in this lease, and that subsequently the Rorer Iron Company, relying upon the same assurances of compromise, purchased the said interest. Now this statement may be viewed in various lights. If Coit and the Rorer Iron Company had been informed of this transaction, they would have known, or might have learned, that the transaction was merely inchoate—that the suit had not been dismissed or the order paid; and so they were guilty of *laches*, and must, as the amendment to the bill says, " take the lease subject to the infirmities of the title of the lessees, Lewis and Preston."

The corporation's answer does not tell us who it was that *informed* Coit that this suit had " been compromised and settled," or on whose " same assurances of compromise" the company relied. It is not intimated that the complainants, or either of them, gave that information or made those assurances. Had the company averred and proved that the complainants so informed Coit, or so assured the company, the case might have been different. But there is no such averment and no such proof. Coit was not

examined as a witness, and no witness hints anything of the kind, nor even that Coit ever saw J. M. Trout or the note to his counsel. The fair inference is, that Preston and his co-tenants furnished the information and made the assurances. Preston was a party, and knew this suit had not been dismissed. J. M. Trout and wife cannot be held responsible for information given Coit, or for assurances made to the Rorer Iron Company by Preston and his co-tenants. A declaration made to one man can seldom be made to influence another, who is absent when it is made, so as to bind the declarant as by estoppel. Because it would be merely secondary, and would only serve to put the absent man on enquiry, and to make it his duty to seek information from the primary source. In this instance, enquiry would necessarily have disclosed the utter untruthfulness of the information.

Preston's co-grantors, Chapman and F. Rorer, knew the transaction was merely executory. All that were interested, including Coit, had heard of the suit, and were put upon enquiry. Full information as to whether the suit was dismissed, or merely continued, was easy of access. There were Trout and his counsel, Ballard, and the public records. Enquiry is the purchaser's duty, and he is affected with all knowledge he would have obtained had he opened his eyes and ears and done his duty. *Wood* v. *Krebbs*, 30 Gratt. p. 715. If Rorer was the company's president when it made the purchase and received the conveyance, he was the more bound to ascertain the true status of the suit, the pendency and object of which he so well knew. The record does not show that J. M. Trout ever saw or heard of Coit, or communicated with him in any way, or did or said aught in his presence, or elsewhere, with design to induce him to do any act. Coit makes no such charge; nor does he testify to or allege any fact from which such a charge could be inferred. Nor has he complained of the decree here in

question. He was not a complete purchaser, never having paid the entire purchase money, and could not and did not make the defense of "purchaser for value without notice." In fact, he made no real defense of any kind. Nor is it averred or proved that the appellees, Trout and wife, had any communication with the appellant company at any time.

On behalf of the appellant it is insisted that its claim to favorable consideration is much enhanced on account of the magnitude of its outlays. But the record shows that the appellant bought the Trout lease, with much other mineral property, in January, 1883, after the institution of this suit, which was brought in August, 1882, to annul that lease which the lessees had fastened upon the land of the lessors, the appellees here, only for their own speculative purposes; and that the appellant became the purchaser of said lease with full notice of the pendency of the suit, and of its object; and that, in fact, all that the appellant did was done after such notice.

This Trout lease was only a very small part of the appellant's purchase. The ownership of this lease could by no means have been the inducement to build its short line of railroad, because the railroad was begun before the purchase of the lease. At all events, no part of the railroad has ever been built on the Trout land; and no expense has been incurred either by the original lessees or their alienees in mining ore upon it. In fact, the fair conclusion from all the evidence is that the numerous other leases and mineral properties embraced in the appellant's purchase of eighteenth January, 1883, were the real inducements to the outlays made, and that the Trout lease was included in the purchase and conveyance, *at a venture for what it might be worth.* We are therefore of opinion that the circuit court did not err in *not* holding that the complainants were estopped from prosecuting this suit.

In the view taken of this case, there is no occasion for passing on the alleged error of the court below in excluding the testimony of certain witnesses, as the admission of the testimony could not have affected the result. In fact, the case has been considered in the light of all the evidence offered by the defendants in the court below. There being then no error in the record of which the appellant can complain, ordinarily the case would here close with a simple affirmance of the decree appealed from; but the appellees, Trout and wife, insist that the said decree is erroneous as to them, and ask that this court will, under the ninth rule, consider the whole record and so amend the decree as to make it as it should have been entered by the said circuit court.

The appellees, however, claim that the court below erred in excepting from the operation of its decree cancelling the lease executed by them to Lewis and Preston April 29th, 1881, one undivided half thereof; thus allowing the Rorer Iron Company the full benefit of the defense of "purchaser for value without notice," though that company had not set up that defense either by its petition, or by answer or plea, as required by the settled rule of practice.

It cannot at this day be questioned that a purchaser for value without notice, actual or constructive, having obtained a conveyance, will not be affected by a latent equity, whether by lien or incumbrance, or trust or fraud, or any other claim; and that a grantee from such a purchaser stands in the same position as his grantor, though affected with notice at the time of the grant. Such purchaser must, however, be a complete purchaser; that is, he must have purchased for a valuable consideration, actually paid the entire purchase money, and received, or be entitled to receive, a conveyance before such notice. The burden rests on him who sets up this defense to prove these three things, and the proof of payment must be actual, the mere recital

of payment in the deed being insufficient. And the burden of affecting such a purchaser with notice of the equity rests on the plaintiff. 2 Minor's Insts. 877–8 ; 2 Leading Cases in Eq. pp. 22, 33, 62, and 100; 1 Story's Eq. Per. § 410; *Carter* v. *Carter*, 21 Gratt. 241 ; *Lamar* v. *Hale*, 79 Va. 147. But it is equally clear that in order to enable a defendant to avail himself of the benefit of this defense of "purchaser for value without notice," he must have set up the same by his plea or by his answer. Because a court of equity can only decree on the case made by the pleadings, though the evidence may show a right to further relief. *Mundy* v. *Vawter*, 3 Gratt. 495 ; *Kent* v. *Kent*, reported in 82 Va. p. 205; Kerr on F. & M., 370–1, note, where that author says: "A defendant who puts in an answer, but does not set up the defense of purchaser for value without notice, cannot afterwards set up that defense." Therefore, in order to enable a court of equity to give a defendant the advantage of such defense, it is essential that he put it in issue by his pleadings; otherwise the court cannot consider and allow it, although the evidence may show that he could have maintained that defense had he set it up by his plea or by his answer.

In *Downman* v. *Rust*, 6 Rand. 660, Carr, J., said: "A purchaser who claims to be a purchaser for value without notice, must expressly deny notice in his answer, *though it is not charged in the bill.* This is settled law." And in *Tomkins* v. *Mitchell*, 2 Rand. 430, this court laid down the same rule in nearly the same language.

In the English notes to *Basset* v. *Nosworthy*, 2 Leading Cases in Eq. 25, it is said by the annotators: " Notice must be denied, whether charged in the bill or not," citing *Aston* v. *Curgon*, *Weston* v. *Berkeley*, and *Brace* v. *Duchess of Marlborough*, 3 P. Wms. 244, 491. And in the American notes to the same case, at page 100, the annotators say:

"Notice must be denied explicitly, whether it is or is not averred in the bill, in order to put the fact in issue, and to enable the opposite party to establish the existence of notice by proof," citing *Harris* v. *Fly*, 7 Paige, 422, 424; *Moore* v. *Clay*, 7 Ala. 742, 751; *Downing* v. *Smith*, 3 John. Chy. R. 345, &c.

In *Johnson* v. *Toulmin*, 18 Ala. 50, it was held that "where defense of purchaser for value without notice is relied on, notice must be denied fully and particularly, though it be not charged in the bill."

In *Doussell* v. *King*, 7 Leigh, 393, this court, per Carr, J., said that "the defense of purchaser for value without notice may be made by *answer* as well as by plea." And in the same case, Tucker, P., at page 401, said: "In the present case the defendants allege that King's purchase and acquisition of title were without notice of the plaintiff's claim. The allegation is, indeed, set forth in the answer, and not by way of plea; but the industry of my brother, Carr, has presented a train of authorities which show that the defense may well be insisted on by way of answer." This decision plainly implies that this defense must be set up either by plea or by answer, and that if set up by neither, it cannot be made by mere proof. 2 L. C. Eq. 102; 1 Bar. Chy. Pr. 375.

To further multiply authorities to sustain a rule of chancery practice so thoroughly well established as that which requires a defendant to deny notice of the plaintiff's claim by plea or answer, even if notice be not charged in the bill, might justly be considered as superfluous. But, in argument, counsel for the appellant deny the existence of the rule, or at least its application to the case in hand; and the postulate of Carr, J., in *Downman* v. *Rust, supra,* was characterized as "a mere *dictum*, not deciding the point"; and *Carter* v. *Allen, supra,* is cited as authority for their contention. This is a clear misapprehension of

counsel. That case was wholly unlike the case here. It was a bill to impeach a decree confirming a judicial sale of a lunatic's land, on the ground that the sale to the nominal purchaser was "a *sham*," and the committee of the lunatic was the *real* purchaser, who, by express statute, was forbid to become such purchaser. And in discussing the pleadings in that case, Christian, J., in delivering the unanimous opinion of the court, said: "But she does not pretend to allege, in any form, in a bill of unusual length, that either Garrett or Barksdale *had any notice* of the fact upon which she relies to impeach the decree, to-wit: that Carter, and not Chapman, was the real purchaser; and that under the statute the sale was therefore void. *No notice to them, actual or constructive,* is charged in the bill. Nor is there anything in the proceedings or decree which she seeks to impeach which could possibly bring home to them knowledge of the alleged legal fraud." Thus, so far from there being in the case of *Carter* v. *Allen* anything to the contrary, that case expressly refers to the rule under consideration, and fully recognizes and sustains it.

No further comment on *Carter* v. *Allen* can be necessary. The rule in question is in reality elementary. It grows logically out of the fact that the defense of "purchaser for value without notice," however presented, whether by plea or by answer, is manifestly a confession and avoidance of the plaintiff's claim—the avoiding part being strictly affirmative matter.

In *Boone* v. *Chiles,* 10 Peters 211, the supreme court of the United States, treating of this defense, said: "It is setting up new matter not in the bill; a new case is presented, not responsive to the bill, but one founded on a right and title operating, if made out, to bar and avoid the plaintiff's equity, which must otherwise prevail. The answer setting it up is no evidence against the plaintiff, who is not bound to contradict or rebut it."

·In the case at bar the complainants file their bill against their lessees, alleging that they procured the deed of lease through· fraud. The appellant, the .Rorer Iron Company, filed its petition reciting the lease and the intermediate alienations whereby it became its sole owner, insisting that by J. M. Trout's promise to dismiss the suit the complainants were estopped to prosecute the same, and praying that itself and the intermediate alienees be made parties. The bill was amended making these alienees parties, and charging them with acquiring the lease subject to all the infirmities of the title of the original lessees. The company answered, again reciting the lease, giving the lessee's version of its execution, insisting on the alleged estoppel, and stating that Coit had been informed that the suit had been settled, and that he had purchased the lease, and that itself, the appellant company, relying on the same assurances, had purchased it from him and made its outlays. But nowhere does the company's answer set up the defense of "purchaser for value without notice," whether by reason of itself being such purchaser, or by reason of its being the grantee of such purchaser. And yet it is insisted for the appellant, and was held by the circuit court, that the said company could avail itself of such defense, although it had not set it up.

In fact, the record discloses that the very idea of such defense never occurred to said company. And very naturally · the idea did not occur to it, not only · because, as appears as well from its own admissions as from the evidence, it did itself have notice of the complainants' claim, but also because of the fact—seemingly well known to the company through its president—that all the intermediate alienees had such notice, or at least had ample opportunity of acquiring it, from the very peculiar nature of this transaction and its attendant circumstances.

First, it was a mere lease for years—not a conveyance in

fee—of land, the consideration whereof was a rent payable out of the land in the shape of a *bonus* on every ton of ore mined thereon.   Secondly, the admitted, visible and notorious circumstance that from the date of the lease up to the day before the deposition of the stockholder and alienee, McClanahan, in November, 1883—long after the dates of all the conveyances—no ore had been mined on Trout's land under this lease; and thirdly, the additional well-known circumstance that the lessees, Lewis and Preston, were not in possession of the leased premises when they conveyed the same to these alienees.   These things surely were enough to put any prudent intended purchaser on enquiry, which enquiry it was their duty to make before purchasing the lease, and which enquiry, had it been made, could not have failed to discover to them all about the plantiffs' claim.

It is well settled law that whatever puts a purchaser on enquiry is equivalent to notice.   Possession of the property by a person other than the vendor is universally regarded as sufficient to put a purchaser on enquiry and to affect him with knowledge of the claims of the possessor.   *Baynard* v. *Norris,* 5 Gill (Md.), 468; *Pendleton* v. *Fay,* 2 Paige (N. Y.), 202; *Graff* v. *Castleman,* 5 Rand. 207; *Baxter* v. *Sewell,* 3 Md. 341; *Wood* v. *Krebbs,* 30 Gratt. 708.   "Possession of land is notice of the possessor's claim to it, because the tenant must abide by his answers to the interrogations of one about to buy."   2 Ldg. Cas. in Eq. 50, 100, 180, and Mr. Justice Baldwin in *Boone* v. *Chiles, supra.*

There can be, then, no reason for hesitating as to the propriety of holding that the inferences necessarily deducible from these pregnant circumstances are more than sufficient to affect with notice the four grantors, McClanahan, Chapman, Rorer and Green, the fifth grantor being Preston.   The answer, containing only affirmative matter not responsive to any allegation in the bill, can furnish no

evidence to support the testimony of the single witness, Chapman, who, speaking for himself alone, denied that he had such notice.

The others, except Green, who did not make oath to or sign the answer, were all examined as witnesses for the appellant, but were not questioned on the point of notice. Rorer, it is admitted, was not a complete purchaser. Preston, the original lessee, of course, had notice. All five were tenants in common. The conclusion is irresistible that all of them were alike aware of the complaints of Trout against his lessees, Lewis and Preston.

And now recurring to the answer of McClanahan, Rorer, Chapman, and Green, whereby they did attempt to present, but in their own behalf only (for they made no allusion whatever either to Coit or to the Rorer Iron Company), the defense of purchaser for value without notice, it has been seen that that answer was insufficient for that purpose, even if it had been clearly established by proof, inasmuch as it omitted to make the essential averment that at the time of the execution of the conveyances to these respondents their grantors were in possession of the premises conveyed. In *Baynard* v. *Norris, supra,* the supreme court of Maryland said: "It cannot at this late day be doubted that a defendant, being a *bona fide* purchaser for value without notice, can defend himself against a complainant asserting a prior equitable claim, by way of answer as well as by the usual plea in bar founded upon such a purchase. But to render such a defense available *at the trial,* the answer must contain an averment of every material fact requisite to sustain such a plea if demurred to. Does the answer of Morris and Jones contain all such material averments, is, therefore, the obvious inquiry to be made in this case. It does sufficiently state some of the facts indispensable to such a plea, to-wit: the transfer of the legal title, the *bona fides* of the transaction, a valuable

consideration paid, and its payment before they had notice of the plaintiff's claim. But the answer has omitted to state one essential fact, to-wit : that the grantor was at the time of the conveyance possessed of the premises conveyed," and cited Eq. Draftsman, 449; 3 Sug. Vend. 345-6; *Daniels* v. *Davidson,* 16 Vesey, 247.

In *Boone* v. *Chiles, supra,* the supreme court of the United States, speaking of this defense, said: "In setting it up by plea or *answer,* it must state the deed of purchase, that the vendor was in possession," &c. All the authorities seem to concur in holding that if the purchaser does not file his plea, but submits to answer, he must answer fully setting up the essentials of the plea. 2 L. Ca. Eq. 26-7; 1 Bart. Chy. Pr., 375 and 386, note 3; 4 Minor's Insts. (old ed.), 1177. And they fully sustain the position taken here, that the answer of these intermediate grantors of the Rorer Iron Company does not sufficiently set up the plea of purchaser for value without notice, even in their own behalf, and of course it could avail naught in behalf of said company, to which it makes no allusion, and which did not even attempt to set up such defense for itself, or to refer to the answer of its co-defendants.

The defense, then, of purchaser for value without notice, was not put in issue by the pleadings in this cause. And even if the evidence had clearly proved,—*which it did not do,*—that the defendants, or any of them, could have maintained such defense as to the whole, or as to any part of the Trout lease, yet the court below could not award relief on such ground, inasmuch as it was bound to confine its decree to the case made by the pleadings. "A party is not allowed to state one case in a bill or answer, and make out a different one by proof," says Mr. Justice Baldwin in *Boone* v. *Chiles, supra.*

For these reasons we are clearly of opinion that though the circuit court did not in its decree complained of com-

mit any error of which the appellant can complain, yet it did err in excepting from cancellation the one undivided half of the lease which the appellees, Trout and wife, executed on the twenty-ninth of April, 1881, to Lewis and Preston, and which passed from them to McClanahan and others through Coit to the appellant, and in decreeing that McClanahan, Chapman and Green recover of the complainants their costs by them in that court about their defense in that behalf expended; and that for this error the said decree must be reversed in favor of the said appellees, Trout and wife, and be amended and corrected, so that it will operate to cancel the said entire lease, with costs to the appellees, and that the same, so amended and corrected, be affirmed.

DECREE AMENDED AND AFFIRMED.