## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

National Surety Corp.

v.

Commonwealth Ford, Inc.,
and Ann R. Stratton

October, 1965

By JUDGE ALEX H. SANDS, JR.

This case, tried upon appeal from the Civil Justice Court of the City of Richmond, without jury, on June 7, 1965, is before the Court for decision.

*Facts*

Lloyd B. Stratton died September 4, 1960, intestate, and his wife, Ann R. Stratton, hereinafter referred to as "Stratton," one of the defendants to this action, qualified as administrator of her husband's estate. National Surety Corporation, plaintiff in this action, qualified as surety upon the administrator's bond.

One of the assets of the estate coming into the administrator's hands was a 1959 Ford Convertible automobile, the value of which was stipulated by counsel to be $1,575.00, titled in the decedent's name.

The automobile being in need of extensive repairs, Stratton entered into a negotiation with Commonwealth Ford, Inc., the co-defendant herein, referred to hereinafter as "Commonwealth" for the purchase of a 1960 model automobile, to which title was issued in Stratton's name individually and upon which the 1959 convertible was accepted in trade by Commonwealth at a value of $2,000.00, the purchase price of the new vehicle being $3,228.00. Title to the 1959 convertible was thereupon transferred by Stratton, as administrator, to Commonwealth and the car subsequently was disposed of by Commonwealth to a purchaser at a price of $1,575.00. Stratton, being unable to meet the payments upon the 1960 automobile, sold it to Dapper Dan for the amount of the balance owing thereon to Commonwealth of approximately $1,700.00, which amount was paid upon the Commonwealth contract, closing out such contract which had been transferred by Commonwealth to Motor Credit Corporation, a finance company located upon the same premises with Commonwealth.

Stratton having been forced to resign as administrator, James Montgomery was appointed administrator d.b.n. and promptly made claim upon Stratton for the value of the 1959 convertible which had been disposed of by her to Commonwealth and the Commissioner of Accounts, before whom the matter came up for hearing, charged Stratton with having improperly distributed the car to herself individually and charged her and her surety with $1,575.00 on account thereof. This ruling was not appealed and has long since become final.

National Surety having paid this amount of $1,575.00 to the administrator d.b.n., sued Stratton and Commonwealth to recover back the amount so paid. (Another smaller amount, not here involved, was likewise paid.) From a judgment in favor of both defendants rendered in the Civil Justice Court, an appeal was taken by plaintiff and a trial de novo had in this Court.

### Defenses

Three defenses are asserted by Commonwealth.

1. That the warrant initiating the proceeding in Civil Justice Court being predicated upon the theory of conversion, and National never having acquired any

right of possession of the res, that such action could not be maintained either in Civil Justice Court or in this Court under the established rules controlling this type action, i.e., conversion.

2. That even though a right of recovery might exist as against Stratton that there was no basis of liability as to Commonwealth who acquired the car from the administrator as a bona fide purchaser for value.

3. That under the doctrine of "Superiority of the Equities" that National Surety, rather than Commonwealth should have to bear the burden of a breach of trust by Stratton.

### First Defense

This defense, if good, would be available to both defendants. It is quite true that the action as initially instituted in Civil Justice Court by plaintiff was upon the theory of trover and conversion and it is equally true that this *form* of action could not be maintained by National. *Mullins* v. *Southerland*, 131 Va. 547 (1921); Burks, *Pleading & Practice* (4th ed.) § 155.

This point was raised at the outset by counsel for Commonwealth in this Court and was overruled by the Court and the form of the action changed to a claim for money had and received and the case tried de novo under this theory. It is believed that this amendment of the form of action by the Court was not only justified but was required by Code sec. 16.1-114. This section provides as to appeals where the *form* of action in the Court not of record cannot be maintained:

> [I]n any such case the court of record shall retain the same, *with full power to direct all necessary amendments*, to enter such orders and direct such proceedings as will tend to correct any such defects, irregularities and omissions, to promote substantial justice to all parties, and to bring about a trial of the merits of the controversy. . . This section shall be liberally construed, to the end that justice be not delayed or denied by reason

of errors in the pleadings or in the form of
the proceedings. (Emphasis added).

This defense, therefore, is without merit.

### Liability of Mrs. Stratton

The liability of Mrs. Stratton appears conclusively
from the evidence. Regardless of her purpose in so doing,
the fact remains that she applied a substantial asset
of the estate, the 1959 convertible, in part payment
upon a car purchased by her in her individual capacity
and this was tantamount to her having applied assets
of the estate to the partial liquidation of her personal
indebtedness to Commonwealth, the estate being insolvent.
The Commissioner of Accounts so held and charged her with
the value of her car in her account and his ruling was
not appealed.

### Commonwealth's Liability

Plaintiff also sues Commonwealth upon the theory
that it was, under the facts of the case, a party to
the act of devastavit upon the part of Mrs. Stratton
and equally liable with her for the loss suffered by
the estate.
This raises the question of when, if ever, is a
purchaser from a personal representative of the estate
liable to the estate for the improper sale to him of
assets of the estate. The answer is that ordinarily a
purchaser, if a bona fide purchaser for value, is not
so liable and this for the very sound reason that he
has the right to assume that the personal representative
is properly discharging his fiduciary duties, is not
charged with investigating the authority of the personal
representative to make the sale and is certainly charged
with no duty of seeing to the proper application by the
personal representative of the purchase money. *Graff
et al.* v. *Castleman et al.*, 26 Va. (5 Rand.) 195 (1827);
*Brockenbrough* v. *Turner et al.*, 78 Va. 438 (1884).
This rule, however, has recognized exceptions, the
first being fraudulent participation by the purchaser
with the personal representative in the commission of

a devastavit by the personal representative. *Jones* v. *Clark*, 66 Va. (25 Gratt.) 642 (1875).

Under early English decision, *Nugent* v. *Gifford*, 2 Ves. Sen. 269, 28 Eng. Rep. 174 (Ch. 1738); *Tanner* v. *Ivie*, 2 Ves. Sen. 466, 28 Eng. Rep. 298 (Ch. 1752), actual fraud on the part of the buyer had to be shown as a basis for liability, but this rule was subsequently modified in England to include constructive fraud as well. *Bonney* v. *Ridgard*, 1 Cox R. 145, 29 Eng. Rep. 1101 (1784). See also *Brockenbrough* v. *Turner*, 78 Va. 438 (1884), giving an exhaustive review of the history of this rule and the development of the exceptions thereto.

The modern English rule as to this exception is thus aptly stated in *Field* v. *Scheiffelin*, 7 Johns. Ch. R. 150 (N.Y. 1823), when after reviewing the prior cases on the question Chancellor Kent remarks:

> The great difficulty has been to determine how far the purchaser dealt at his peril when he knew, from the very face of the proceedings, that the executor was applying the assets to his own private debt. *The later and the better doctrine is, that in such case he does buy at his peril. . .* (Emphasis added).

The general rule applies to this situation, i.e., that whatever puts a purchaser upon inquiry is equivalent to notice and where it appears in the transaction in question (i.e., that between purchaser and executor) that the personal representative is about to apply the proceeds of the sale of assets of the estate to his own interests or for purposes with which the estate has no connection this should put purchaser on notice that a devastavit is being committed and he thus buys at his peril. *Rorer Iron Co.* v. *Trout*, 83 Va. 397 (1887); *Graff et al.* v. *Castelman et al.*, 5 Rand. 195 (1827).

*Evidence in the Case at Bar*

The testimony of Mrs. Stratton, though denied by the witness Hines upon several material issues, is believed by the Court to be true. This testimony is to the effect:

1. That she took the 1959 Ford Convertible to Commonwealth with the idea of exchanging it for a car of comparable value to be titled in the name of the estate.

2. That Commonwealth persuaded her to purchase a later model car.

3. That she asked that this later model car be titled in the name of the estate but that Commonwealth refused to do this, insisting that the sale be to her individually and not to the estate.

4. That with full knowledge that the allowance upon the 1959 convertible was to be applied to the credit of Mrs. Stratton individually, Commonwealth nevertheless not only *agreed* to the transaction, but actually *suggested* that the estate's property be applied to Mrs. Stratton's individual indebtedness.

5. That Commonwealth further permitted Mrs. Stratton to make eleven monthly payments of $30.00 per month in payment for the car, with a balloon payment of $1,320.00 to fall due the twelfth month upon the gamble that she would receive enough money as beneficiary of her husband's estate to meet such balance.

*Commonwealth Guilty of Constructive Fraud*

Not only did Commonwealth accept the car titled in the Stratton estate in part payment of the individual obligation of Mrs. Stratton, but actually engineered the arrangement by which this was to be accomplished. The fact that in order to consummate the sale Commonwealth allowed more upon trade in than the convertible was worth is entirely beside the point. The decisive point in this case is that Commonwealth not only had knowledge of, but was a party to, the application by Mrs. Stratton of proceeds from the allowance upon the estate's car to her own individual indebtedness.

## Superiority of Equities

Finally Commonwealth attempts to invoke the doctrine of Superiority of Equities. As between surety and a bona fide purchaser for value this doctrine is unquestionably applied against the surety. *Brockenbrough* v. *Turner et al.*, 78 Va. at page 456 (1884). This doctrine has, however, no application where the circumstances surrounding the sale are such as to put the purchaser upon notice that a devastavit is being committed by the personal representative. *Idem.* at page 457. A fortiori it does not apply where, as here the purchaser is guilty of the most flagrant constructive fraud, so flagrant, in fact, as to approach if not constitute, actual fraud.

## Conclusion

For the above reasons judgment will be entered in favor of plaintiff against both defendants.

Counsel may present sketch for order in accord with the above ruling saving all desired exceptions. As Mrs. Stratton is not represented by counsel the order should save all exceptions on her behalf. The order should also reflect the action of the Court at the outset of the trial in overruling Commonwealth's motion based upon the form of action and the amendment by the Court of the form of action from one of trover to that of money had and received.